# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3678

_____

Jane Turner

*Plaintiff - Appellant*

v.

United States Department of Justice; Eric Holder, Attorney General; James M. Cole, Deputy Attorney General

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 22, 2015
Filed: February 17, 2016

_____

Before WOLLMAN, BYE, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Jane Turner, a former special agent with the Federal Bureau of Investigation (FBI), appeals the district court's[1] dismissal of her complaint against the Department

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

of Justice (DOJ) for lack of subject matter jurisdiction.  Turner argues that the district court improperly applied the doctrine of collateral estoppel.  We affirm.

I.

The Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), established a framework for federal employees to challenge, *inter alia*, adverse personnel actions taken against them in retaliation for making protected disclosures.  For most federal employees, the CSRA provided a comprehensive procedure, in which the Office of Special Counsel investigated allegations of prohibited personnel practices and prosecuted violators before the Merit Systems Protection Board (MSPB).  Employees could appeal adverse MSPB decisions in the appropriate United States Court of Appeals.[2]  5 U.S.C. § 1221(h).

For FBI employees, however, this procedure does not apply because the CSRA specifically excludes them from the procedures outlined above.  Id. § 2302(a)(2)(C)(ii)(I).  Instead, the Attorney General, directed by the President, issued regulations to "provide for the enforcement of this section in a manner consistent with" the procedures available to other federal employees.  Id. § 2303(c). Under those regulations, FBI employees who allege that a personnel action taken against them constitutes retaliation for making certain protected disclosures to the Attorney General must first request an investigation through the DOJ's Office of the

_____

[2]Initially, employees could appeal MSPB decisions only to the United States Court of Appeals for the Federal Circuit.  But Congress has since implemented a five-year trial period during which employees may appeal the MSPB's findings in "any court of appeals of competent jurisdiction."  See All Circuit Review Extension Act, Pub. L. No. 113-170, 128 Stat. 1894 (2014); Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465 (codified as amended at 5 U.S.C. § 7703(b)(1)(B)).

Inspector General (OIG) or its Office of Professional Responsibility (OPR). 28 C.F.R. § 27.4. The investigating agency must then submit a report to the Director of the Office of Attorney Recruitment and Management (OARM), including recommendations for corrective actions OARM should order. If the investigating office does not complete its investigation within 120 days, however, the employee may directly request that OARM order a corrective action. Id. OARM must then determine whether a protected disclosure was a contributing factor in an adverse personnel action. In making its findings, OARM has authority to hold hearings and to subpoena testimony and documents. If OARM finds that any reprisal has taken place, it may order appropriate remedies. Both the FBI and the employee may appeal OARM's findings to the Deputy Attorney General, who will affirm OARM's findings unless he concludes that they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Id. § 27.5.

Turner was employed by the FBI for twenty-five years, from 1978 until October 2003. During her career, she twice alleged retaliation and followed the procedures outlined above.

Turner filed her first claim in 2001, alleging that she was transferred from her office in North Dakota to an office in Minnesota in retaliation for filing a sex discrimination complaint. She filed her initial complaint with OPR, but the office did not complete its investigation within one year. Rather than pursuing a corrective action, Turner submitted a letter to OPR, requesting that her complaint be voluntarily dismissed without prejudice. OPR did not respond to Turner's letter. In October 2002, Turner filed a second complaint with OPR regarding the same underlying incident, but which included additional allegations. OPR took no action on Turner's second complaint. In June 2003, OPR informed two FBI officials by letter that Turner's claims regarding the incident were without merit.

OPR also refused to reopen the proceedings based on Turner's second complaint, and it published a report discussing her first complaint. Turner did not seek a corrective action from OARM.

Instead, Turner filed suit in the U.S. District Court for the District of Columbia, alleging that OPR had not conducted its investigation as required by the applicable regulations and seeking injunctive and declaratory relief under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-06. The DOJ moved to dismiss Turner's claims for lack of jurisdiction. Fed. R. Civ. P. 12(b)(1). The district court granted the DOJ's motion, concluding that because Congress intended the CSRA "to be the exclusive remedy for federal employees alleged to have been aggrieved by actions related to their employment," the district court did not possess subject matter jurisdiction over Turner's claims. Roberts v. U.S. Dep't of Justice (Turner I), 366 F. Supp. 2d 13, 21 (D.D.C. 2005).[3] Turner did not appeal the district court's judgment.

Turner filed her present claim, which arose out of a separate incident, with OIG in September and October 2002. Turner alleged that she was retaliated against for disclosing to the DOJ that FBI employees had taken victims' property from the scene of the 9/11 attacks in New York City, including an expensive crystal-globe paperweight. Turner's disclosures led to an investigation that implicated several FBI employees, including supervisors and at least one Assistant Director. Turner alleged that within one month of making these disclosures, her supervisor retaliated against her by issuing a negative performance evaluation and by initiating procedures to terminate her employment. After filing her claim with OIG, Turner took administrative leave, citing a hostile work environment. She retired on October 31, 2003. When the OIG failed to complete its investigation within 120 days, Turner requested that OARM order corrective actions, asserting that, because her retirement

---

[3]Brenda and John Roberts were also plaintiffs in this case. We refer to the decision as Turner I, however, for clarity.

constituted a constructive discharge, she was entitled to back pay from the date of her retirement. Following discovery and briefing,[4] OARM found that Turner had been subject to reprisal and ordered Turner's requested corrective actions. The FBI appealed OARM's order to the Deputy Attorney General, who affirmed in part, but remanded with instructions for OARM to determine whether Turner had been constructively discharged. On remand, OARM found that Turner had not been constructively discharged and modified its original order to deny Turner back pay and to adjust the rate of her retirement pay. Turner then appealed, and the Deputy Attorney General affirmed.

Once again, Turner filed suit against the DOJ, this time in the District of Minnesota. Turner sought review of the final agency action under § 704 of the APA, claiming that the Deputy Attorney General's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A). The DOJ moved to dismiss, arguing that the court lacked subject matter jurisdiction because the same issue had already been decided in Turner I, and that Turner's claim was thus barred by collateral estoppel. As recounted above, the district court granted the DOJ's motion.

II.

We review *de novo* the district court's grant of a motion to dismiss based on collateral estoppel. See Knutson v. City of Fargo, 600 F.3d 992, 995 (8th Cir. 2010).

Under the doctrine of collateral estoppel, also called issue preclusion, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is

_____

[4]Turner and the FBI elected to have OARM decide the case on the record and their briefs. Neither party requested a hearing.

conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (Am. Law Inst. 1982). Collateral estoppel applies "to questions of jurisdiction as well as to other issues." Sandy Lake Band of Miss. Chippewa v. United States, 714 F.3d 1098, 1102 (8th Cir. 2013). We have held that collateral estoppel consists of five elements:

> (1) the party sought to be precluded in the second suit was a party . . . in the prior suit; (2) the issue sought to be precluded is the same as the issue involved in the prior action; (3) the issue was "actually litigated" in the prior action; (4) the issue was determined by a valid and final judgment; and (5) the determination in the prior action was "essential to the judgment."

Morse v. Comm'r, 419 F.3d 829, 834 (8th Cir. 2005).

Although it is undisputed that Turner was a party to Turner I, Turner argues that collateral estoppel does not apply because the issues in the two lawsuits are different.[5] She contends that Turner I did not address the issue whether courts possess subject matter jurisdiction to review final agency action taken under the CSRA and the related DOJ regulations. We disagree.

In Turner I, the district court addressed whether the APA, in conjunction with 28 U.S.C. § 1331, vests federal district courts with subject matter jurisdiction over Turner's claims that the DOJ "fail[ed] to properly process [Turner's] whistleblower reprisal complaints in compliance with the procedures required by the [CSRA]." Turner I, 366 F. Supp. 2d at 17. The court acknowledged that district courts generally have jurisdiction over APA claims "*unless* a preclusion of review statute specifically

---

[5]Turner nominally argues that collateral estoppel does not apply because four elements were not met, but three of her arguments derive from her argument that the issues were not the same. For example, she argues that the issue was not actually litigated because the district court did not address the issue presented in this case.

bars judicial review in the district court." Id. at 18. Thus, in granting the DOJ's motion to dismiss, the district court necessarily decided that the CSRA expressly "bars judicial review of claims within the purview of the CSRA." Id.

In this case, the ultimate issue in the DOJ's motion to dismiss was whether § 704 of the APA, in conjunction with 28 U.S.C. § 1331, vests the district court with jurisdiction to review the DOJ's final agency action that was taken under "the procedures required by the [CSRA]." Id. at 17. As in Turner I, this question would have required the district court to interpret the CSRA and determine whether it demonstrates Congress's intent to preclude judicial review for FBI employees. Factual differences between the two underlying causes of action are immaterial, because those differences do not affect the common question, namely, whether Congress intended the CSRA to proscribe unique and exclusive remedial procedures for FBI employees alleging retaliation. See Restatement (Second) of the Law § 27, cmt c (Am. Law. Inst. 1982) (noting that issues may be different for collateral estoppel purposes if there is not "a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first").

Turner argues that the issue presented in this case is different from the issue decided in Turner I because this case involves an APA challenge to final agency action. In reviewing a claim of collateral estoppel raised in a motion to dismiss based on lack of subject matter jurisdiction, we have held that the issues are the same if both cases rely on the same basis for subject matter jurisdiction. Sandy Lake Band of Miss. Chippewa, 714 F.3d at 1103. For example, in Sandy Lake, the Bureau of Indian Affairs (BIA) denied the Sandy Lake tribe's request to hold an election because the tribe was not on the list of recognized Indian tribes published by the Secretary of the Interior. Id. at 1101. The Sandy Lake tribe appealed the BIA's decision, but did not petition the Department of the Interior (DOI) for inclusion on the federal list of recognized tribes. Id. In its first action in federal district court, the Sandy Lake tribe challenged the BIA's denial of its request to hold an election. Id.

The district court dismissed for lack of subject matter jurisdiction, concluding that the tribe had failed to exhaust administrative remedies because it had not petitioned the DOI for inclusion on the list of recognized Indian tribes. Id. In its second action, the tribe challenged the Secretary's authority to promulgate regulations requiring inclusion on the list of recognized Indian tribes. Id. at 1101-02. In defending against the government's motion to dismiss, the tribe claimed that collateral estoppel did not apply because the second action "allege[d] new theories of relief and a different basis for subject matter jurisdiction." Id. at 1103. We rejected this argument, noting that although the Sandy Lake tribe "characterized its claims [in the second action] as a 'direct challenge to the regulation,'" the claims were cognizable only as APA claims. Id. Accordingly, because the district court in the first action had already decided the issue of subject matter jurisdiction based on an APA claim, we concluded that the issues were the same for purposes of collateral estoppel. Id.

Here, as in Sandy Lake, both of Turner's suits relied on the same basis of subject matter jurisdiction, and so the issues are the same for collateral estoppel purposes. Compare J.A. 71 (asserting jurisdiction under "the [APA], 5 U.S.C. §§ 701-706" in Turner I) with J.A. 8 (asserting that the present lawsuit is "an action under the [APA], 5 U.S.C. § 702, *et seq*"). Although Turner argues that the Turner I court did not address whether the APA vests jurisdiction specifically for final agency action, it held that the APA does not apply to claims alleging violations of the CSRA. Thus, because the Turner I court decided the issue of subject matter jurisdiction on the same basis that is at issue here—the exclusivity of the CSRA—Turner is precluded from re-litigating the matter. Stated differently, because the district court in Turner I did not dismiss her case on the basis of her failure to exhaust administrative remedies, the fact that she challenged final agency action in this case is irrelevant for collateral estoppel purposes.

Turner further argues that, although both claims involved APA-based subject matter jurisdiction, the issues are different because the basis for subject matter

jurisdiction here is § 704 of the APA, which requires application of a different legal standard. "[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." B&B Hardware, Inc. v. Hargis Indus., Inc., 135 S. Ct. 1293, 1306 (2015) (alteration in original) (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4417 (2d ed. 2002)). In Turner I, the district court applied the rule that "jurisdiction over APA challenges to federal agency action is vested in district courts *unless* a preclusion of review statute specifically bars judicial review in the district court." Turner I, 366 F. Supp. 2d at 18 (citing Chrysler Corp. v. Brown, 441 U.S. 281, 357 (1979)). Were the district court in this case to decide whether § 704 permits judicial review of final agency action under the CSRA, it would necessarily decide whether "the statute explicitly precludes judicial review." See Kenny v. Glickman, 96 F.3d 1118, 1122 (8th Cir. 1996). Thus, even if we were to construe application of different sections of the APA as raising potentially different issues, collateral estoppel would still bar the action because both actions involve application of the same legal standard.

III.

In light of our holding above, we need not address Turner's remaining arguments. Cf. Ginters v. Frazier, 614 F.3d 822, 826 (8th Cir. 2010).

The judgment is affirmed.

_____