**SHELTER MUTUAL INSURANCE COMPANY, Plaintiff-Respondent,**

v.

**Patrick S. PARRISH, Defendant,**

and

**Douglas Lyle Gailey, Defendant-Appellant.**

No. 12959.

Missouri Court of Appeals, Southern District, Division One.

Sept. 26, 1983.

Motion for Rehearing or to Transfer Denied Oct. 18, 1983.

Application to Transfer Denied Nov. 22, 1983.

Raymond E. Whiteaker, Lynn C. Rodgers, Richard A. Massie, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for defendant-appellant.

Kenneth H. Reid, Michael J. Patton, Turner, Reid, Duncan, Loomer & Patton, Springfield, for plaintiff-respondent.

FLANIGAN, Presiding Judge.

Plaintiff Shelter Mutual Insurance Company brought this action against defendants Patrick Parrish and Douglas Gailey. On July 18, 1980, Shelter issued to Parrish its "apartment owner's policy," including liability coverage. The declarations sheet of the policy shows the policy period to be from July 18, 1980, to January 18, 1981. The litigation stems from an incident which occurred on November 25, 1980, in which Parrish, using a .357 Magnum pistol, shot Gailey.

Shelter's petition alleged: 1. Issuance of the policy to Parrish; 2. The contents of the policy; 3. The intent of Parrish and Shelter that the policy period be three months; 4. The shooting incident; 5. The filing, by Gailey against Parrish, of a tort action (seeking $5,000,000 actual damages for personal injuries and $10,000,000 in punitive damages as a result of the shooting incident) and the pendency of that action.

The petition requested the following alternative relief:

(1) Reformation of the policy to correct a mutual mistake of Shelter and Parrish so that, as reformed, the policy period would be from July 18, 1980, to October 18, 1980, with the result that the policy was not in effect on the date of the shooting incident; or (2) "If the court should find that the policy should not be reformed and that the policy period properly was and is from July 18, 1980, to January 18, 1981," a declaration that the policy did not afford Parrish coverage with respect to the defense of the tort action or any judgment which Gailey might obtain against Parrish therein. The issues which form the basis for the second request will be referred to as "the declaratory judgment issues."

Sitting without a jury the trial court denied the relief of reformation but found in favor of Shelter on the declaratory judgment issues and awarded the declaration requested. Only defendant Gailey appeals.

Gailey contends that the trial court erred in depriving him of his right to trial by jury on the declaratory judgment issues.

The record reflects that the case had been set for jury trial at the request of defendant Parrish. On December 11, 1981, plaintiff Shelter filed a "motion to strike jury trial setting." In the suggestions accompanying that motion Shelter stated, "plaintiff is advised that defendant Gailey also demands a jury trial." Gailey's counsel appeared at the hearing on the motion and opposed it. On December 31, 1981, the court sustained Shelter's motion.

On the day of the trial, June 30, 1982, and before the reception of evidence, counsel for Gailey renewed his request for a jury and it was not granted. Shelter, properly, makes no claim that Gailey waived his right to a jury by entering into trial before the court without objection. See Rule 69.01(b)(4).[1]

Defendant Gailey argues that he was entitled to a jury trial with respect to the declaratory judgment issues because: (1) a jury trial had been requested and the trial court lost equity jurisdiction when it found the issues against plaintiff Shelter and in favor of defendants on Shelter's claim for reformation of the policy and (2) there were substantial factual matters with respect to the declaratory judgment issues which should have been submitted to a jury.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R. and all references to stat-

utes are to RSMo 1978, V.A.M.S.

Seeking to uphold the ruling of the trial court denying Gailey a trial by jury, Shelter argues: (1) Gailey's contention has not been preserved because Gailey did not appeal from the trial court's order of December 31, 1981, and, alternatively, (2) even if the trial court erred in denying Gailey his right to trial by jury, Gailey was not prejudiced by that ruling because even if a jury trial had been held the trial court would have been required to direct a verdict on the declaratory judgment issues in favor of Shelter. In support of its latter position, Shelter argues: (1) the burden of proof on the issue of whether the shooting incident was "an occurrence," as required by and defined in Shelter's policy, was on the defendants, including Gailey; (2) defendants did not meet their burden of proof and, indeed, the evidence was to the effect that the shooting was not "an occurrence."

For the reasons which follow, this court holds that Gailey's contention has been preserved for appellate review, that the trial court erred in denying Gailey a trial by jury on the declaratory judgment issues, and that the error was not prejudicial and does not require reversal and remand because Gailey, who had the burden of proof on the coverage issue, failed to present evidence sufficient to create an issue of fact for submission to a jury. This court also holds that, as a matter of law, the shooting incident was not "an occurrence." [2]

■ The trial court's order of December 31, 1981, sustaining Shelter's motion, was not an appealable order. "Absent specific authority, appeals do not lie from rulings on motions which do not constitute a final disposition of the cause, as cases are not to be brought to appellate courts by appeal in detached portions." *Morrison v. Estate of Martin,* 427 S.W.2d 783, 784[2] (Mo.App. 1968). *Morrison* points out that the right of appeal is purely statutory and where the statutes do not give such a right, no right of appeal exists.

Sec. 512.020 provides, in pertinent part: "Any party to a suit aggrieved by any judgment of any trial court in any civil cause ... may take his appeal to a court having appellate jurisdiction from any order granting a new trial ... or from any final judgment in the case ...; but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case."

Although § 512.020 permits the appeal from certain orders therein specified, including an order granting a new trial, an order of the type involved here is not so specified. The propriety of the trial court's denial of a jury trial is reviewable on this appeal by Gailey from the final judgment in the case.

■ The petition combined a claim for reformation with a claim for a declaratory judgment. In an action for declaratory judgment brought pursuant to Chapter 527, a party has the right, under § 527.090, to a trial by jury for determination of fact issues. *K.D.R. v. D.E.S.,* 637 S.W.2d 691, 695[5] (Mo. banc 1982); *M.F.A. Mutual Insurance Co. v. Quinn,* 259 S.W.2d 854, 859 (Mo.App.1953). On the other hand "[r]eformation of a written instrument has long been considered an equitable proceeding." *Bridge Development Co. v. Vurro,* 519 S.W.2d 321, 325[5] (Mo.App.1975).

---

**2.** In view of this holding it is unnecessary to rule on the validity of Shelter's alternative argument that liability coverage under the Shelter policy was excluded under Exclusion (n) which reads: "This insurance [liability coverage] does not apply ... (n) to personal injury arising out of the *wilful* violation of a penal statute ... committed by ... any insured." (Emphasis added.) As result of the shooting incident Parrish entered a plea of guilty to a violation of § 565.060 (assault in the second degree). The information in the felony case charged that Parrish "*recklessly* caused serious physical injury to Douglas Gailey by shooting him by means of a deadly weapon, to-wit: a .357 Magnum pistol. (Emphasis added.) Parrish was sentenced to imprisonment for five years but the court ordered that execution of the sentence be suspended and Parrish was placed on probation for five years. A condition of probation was that he spend 60 days in jail.

■ In *State ex rel. Willman v. Sloan,* 574 S.W.2d 421 (Mo. banc 1978), the following principles were stated: The Missouri Constitution[3] provides, Art. I, § 22(a), "[t]hat the right of trial by jury as heretofore enjoyed shall remain inviolate"; however, there is no right to trial by jury in a case in equity; the general rule is that "equity will retain jurisdiction of a cause once it has acquired it in order to afford full relief"; the general rule does not apply, however, "when the *facts* relied on to sustain the equity jurisdiction fail of establishment" (emphasis in original); a court of equity does not have jurisdiction to render a judgment for a plaintiff on legal issues in the absence of a *finding* that some equitable right of the plaintiff has also been violated (emphasis added); the exception applies in certain situations, including "where the equitable claims of plaintiff are ... found adversely to him ... and thus there remains no equity in the case."

■ The so-called "doctrine of equitable clean-up," which is that "when equitable jurisdiction attaches the court may determine the legal issues incident to the entire case," *Linville v. Wilson,* 628 S.W.2d 422 (Mo.App.1982), was eliminated from this case when the trial court denied Shelter relief on its claim for reformation.

A similar situation arose in *Jaycox v. Brune,* 434 S.W.2d 539 (Mo.1968). There plaintiff brought an action in two counts. Count 1 was based on a claim in equity and Count 2 was based on an action at law. Plaintiff filed a request for a jury trial and the motion was overruled "several weeks before the trial." During the trial the trial court dismissed Count 1 on motion of the defendants. After the trial the trial court entered judgment in favor of defendants on Count 2. On the appeal by plaintiff, plaintiff did not challenge the court's ruling on Count 1 but claimed that the court erred in

denying his motion for a jury trial on Count 2. In upholding plaintiff's contention the supreme court held that the trial court "lost its equity jurisdiction and should have *then* granted plaintiff's request for a jury trial on Count 2 (or it might have sustained the motion conditionally in the first instance). This, of course, will require a new trial of the issues on Count 2." (Emphasis added.)

The supreme court also said, in language applicable here, "In this situation we reach the question,—did plaintiff's evidence on Count 2 fail *as a matter of law* to make a case submissible to a jury? If so, we could reasonably hold that he was not prejudiced by the trial to the court." (Emphasis in original.)

Although *Jaycox* involved an inquiry by the supreme court into the sufficiency of a *plaintiff's* evidence to make a submissible case, that principle applies to defendant Gailey because, as will be seen, Gailey had the burden of proof with respect to the declaratory judgment issues.

The pertinent provisions of Shelter's policy read:

"[Shelter] will pay on behalf of [Parrish] all sums which [Parrish] shall become legally obligated to pay as damages because of:

"A. Bodily Injury ... caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto. . . ."

\*    \*    \*    \*    \*    \*

" 'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

■ The burden of proof was on Gailey to show that his "bodily injury," which was the subject of the tort action, resulted from

---

3. The Seventh Amendment to the United States Constitution, dealing with the right to trial by jury in civil actions, is not involved for the reason that it has no application to a civil trial in state court. See *Curtis v. Loether,* 415 U.S. 189, 192 n. 6, 94 S.Ct. 1005, 1007, n. 6, 39 L.Ed.2d 260 (1974); *Colgrove v. Battin,* 413

U.S. 149, 169 n. 4, 93 S.Ct. 2448, 2459, n. 4, 37 L.Ed.2d 522 (1973) (Marshall, J., dissenting); *Galvin v. Welsh Mfg. Co.,* 382 Mass. 340, 416 N.E.2d 183, 186[4] (Mass.1981); *Eckrich v. St. Louis Transit Co.,* 176 Mo. 621, 75 S.W. 755, 764 (1903).

an "occurrence" as that term is defined in the policy. *Auto-Owners Ins. Co. v. McGaugh,* 617 S.W.2d 436, 444[11] (Mo.App. 1981); *State Farm Mutual Automobile Insurance Company v. Johnson,* 586 S.W.2d 47, 52[7] (Mo.App.1979); *M.F.A. Mut. Ins. Co. v. Quinn,* 259 S.W.2d 854, 858[1] (Mo. App.1953). As stated in *McGaugh,* "The burden of proving coverage is upon the person seeking coverage." This is not a situation where Shelter is relying upon a policy exclusion.

■ For some time prior to November 25, 1980, Gailey had been living with Lisa Brown in an apartment in the apartment building owned by Parrish. The building was the "insured premises" under the Shelter policy. Lisa is the sister-in-law of Parrish. About five days before the shooting incident Gailey and Lisa "had a falling out" and Gailey moved out of the apartment. Lisa and Gailey broke up "because she was dating a fellow named Patterson."

On November 25 Gailey went to Lisa's apartment at 6 p.m. but she was not there. Gailey went to another apartment, drank five or six beers, and awaited Lisa's return. At 10 p.m. Lisa and Patterson came to Lisa's apartment. A fight ensued between Patterson and Gailey.

Gailey testified: "Ten or fifteen seconds after the fight started I saw Parrish in the doorway. Parrish had a gun in his hands. That stopped the fight. Parrish had said, 'Break it up' and Patterson and I did break it up. After the fight broke up Parrish went over to the other side near Lisa. I was facing Parrish and Parrish was facing me. Parrish had a gun pointed right at me. There was no doubt in my mind where the gun was pointed. Parrish said, 'Now get out.' Parrish still had the gun pointed at me. I said to Parrish, 'Let me make it easy for you' and I made some remark about [obscenity]. I walked toward Parrish, took a couple of steps toward him. He still had the gun pointed at me. Parrish did not

respond to my comments and did not say anything. As I took a couple of steps toward Parrish I said, 'Go ahead and shoot me' and I came toward Parrish and I said, 'Go ahead, you've got the gun so shoot me.' At that time I was three to five feet away from him, right in his face. The entire time Parrish had the gun pointed at my mid-section. I could tell that the gun was aimed so that if it was fired it was going to hit me. After the statement I made I was three or four feet from Parrish and Parrish shot me within an inch or two of my navel. At no time did Parrish tell me the gun was not loaded. I had no reason to believe the gun was unloaded. The gun was shot right where it aimed, right in my stomach."

Called as a witness by Shelter, Parrish testified, "The shooting involved a pistol I was holding. The pistol discharged and struck Gailey in the mid-section."

On cross-examination by Gailey's counsel Parrish testified, "I did not know the pistol was loaded. I knew before I walked up there that I had some bullets in the house that I had purchased for the gun. I did not inspect the gun to see if it had bullets in it. If I had looked into the chamber I would have found live bullets because there was a live bullet in there and one of these live bullets struck Gailey. I did not intend to cause physical harm, recklessly in nature. I pulled the trigger intentionally." [4]

It is beyond dispute that Parrish intentionally pulled the trigger of the pistol while it was aimed directly at Gailey and that Gailey's injuries resulted therefrom. The trial court made an express finding of fact, challenged by Gailey, to this effect: that Gailey's injury was expected or intended from the standpoint of Parrish. Gailey argues that his injuries were "neither expected nor intended from the standpoint of the insured [Parrish] because of Parrish's undisputed testimony that he did not know the pistol was loaded and that he did not intend to cause physical harm."

---

**4.** In the trial court Parrish made no claim that the shooting of Gailey was justifiable as a matter of self-defense. Similarly, on this appeal by Gailey, no such claim is made. Indeed Gailey's

brief says, "There was certainly no threatening behavior [by Gailey] toward Parrish. Parrish at no time testified that he was in any fear for his own safety."

The crucial inquiry is the significance of Parrish's testimony with regard to his state of mind. The trial court did not believe him but if the credibility of that testimony was the key to the coverage issue, Gailey was entitled to have that factual determination made by a jury. If, on the other hand, Parrish's description of his state of mind, even if believed, was of no moment, Shelter would have been entitled to a directed verdict and Gailey would not have been prejudiced by the denial of his request for a jury.

In *Truck Ins. Exchange v. Pickering*, 642 S.W.2d 113 (Mo.App.1982), and *Travelers Ins. Co. v. Cole*, 631 S.W.2d 661 (Mo.App. 1982), a policy of liability insurance contained the same definition of "occurrence" found in the Shelter policy. In *Pickering* the insured, Pickering, intentionally drove the insured vehicle toward two people, killing one of them and injuring the other. Pickering pleaded guilty to a charge of manslaughter. The court held the incident was not an "occurrence." The court rejected the proposition that a "subjective standard"—a standard entailing a "subjective state of mind which was susceptible of proof only by admission of specific intent on the part of assured"—should be used to determine whether an injury is "expected or intended" from the standpoint of the insured.

The court said, at p. 116:

"Probing one's state of mind is an elusive task at best. Supplanting an objective standard with a subjective standard for determining whether the act or conduct of an insured is 'intentional' or 'expected or intended' for purposes of assessing coverage would emasculate apposite policy provisions by making it impossible to preclude coverage for intentional acts or conduct absent admission by insureds of a specific intent to harm or injure. Human nature augurs against any viable expectation of such admissions."   .

In *Cole* a police officer was injured as a result of a gunshot wound inflicted by the insured Cole. In holding that the shooting was not an "occurrence" the court said, at p. 664:

"Injury or damage is intentional if the insured acts with the specific intent to cause harm or if the insured's intent to harm is inferred as a matter of law from the nature or character of the act.... Intent to harm is inferred if the natural and probable consequences of an act are to produce harm.

"The insured's actions in discharging a gun at Officer Didden, in the insured's residence, was a dangerous act from which harm was almost certain to result."

Significantly, the court pointed out that Cole had stipulated that he "knew *or should have known* that the gun was loaded and if fired would cause serious injury if not death." (Emphasis added.) The court said, "The intent and expectation of harm could also be inferred from that stipulation."

Although there was no direct evidence that Parrish was the owner of the pistol, Parrish did testify that he had purchased bullets for it. Parrish also testified that he pulled the trigger intentionally at a time when he was pointing the pistol directly at Gailey's mid-section while the men were three to five feet apart. That conduct, viewed objectively, made Gailey's injuries, from Parrish's standpoint, "expected or intended." Parrish's protestations, even if believed, to the effect that he did not know the gun was loaded and that he did not intend to harm, do not lessen the dastardly quality of his act.

In light of the rulings in *Pickering* and *Cole*, this court holds that Gailey's injuries did not constitute "bodily injury neither expected nor intended from the standpoint of [Parrish]" and that, as a matter of law, the shooting incident was not an "occurrence."

Foreign cases, each involving a shooting incident and generally supporting the foregoing holding, include: *Armstrong v. Security Ins. Group*, 292 Ala. 27, 288 So.2d 134 (1973); *Woida v. North Star Mut. Ins. Co.*, 306 N.W.2d 570 (Minn. banc 1981); *Kipnis v. Antoine*, 472 F.Supp. 215 (N.D.Miss.1979);

*Norman v. Insurance Co. of North America,* 218 Va. 718, 239 S.E.2d 902 (1978); *Lockhart v. Allstate Ins. Co.,* 119 Ariz. 150, 579 P.2d 1120 (1978); *Nat. Investors Life & Cas. Ins. v. Arrowood,* 270 Ark. 617, 606 S.W.2d 97 (1980); *Draffen v. Allstate Ins. Co.,* 407 So.2d 1063 (Fla.App.1981); *Casualty Reciprocal Exchange v. Thomas,* 7 Kan. App.2d 718, 647 P.2d 1361 (1982); *Tobin v. Williams,* 396 So.2d 562 (La.App.1981); *Monk v. Veillon,* 312 So.2d 377 (La.App. 1975); *Kermans v. Pendleton,* 62 Mich.App. 576, 233 N.W.2d 658 (1975); *Blue Ridge Ins. Co. v. Nicholas,* 425 F.Supp. 827 (E.D.Mo. 1977); *Stout v. Grain Dealers Mutual Ins. Co.,* 201 F.Supp. 647 (M.D.N.C.1962). The first four cases cited involved policies containing a definition of "occurrence" substantially identical to that found in the Shelter policy. The other cases involved exclusions, variously expressed, with regard to bodily injury "caused intentionally by or at the direction of the insured" or "bodily injury which is either expected or intended from the standpoint of the insured." See also 72 A.L.R.3d 1090 (Liability Insurance: Assault as an "Accident," or Injury Therefrom as "Accidentally" Sustained, Within Coverage Clauses.)

On the other hand, the following cases, each involving a shooting incident, are generally contrary to this court's holding: *Vanguard Insurance Company v. Cantrell,* 18 Ariz.App. 486, 503 P.2d 962 (1973); *Colonial Penn Ins. Co. v. Hart,* 162 Ga.App. 333, 291 S.E.2d 410 (1982); *Patrons-Oxford Mut. Ins. Co. v. Dodge,* 426 A.2d 888 (Me.1980).

The evidence before the trial court was such that if a jury trial had been held, Shelter would have been entitled to a directed verdict on the declaratory judgment issues.

Shelter does not argue that, totally aside from the language in its policy, as a matter of public policy coverage will not be extended to Parrish with respect to liability arising out of his own criminal conduct. For authorities lending support to such an argument see *Lyons v. Hartford Insurance Group,* 125 N.J.Super. 239, 310 A.2d 485, 488[2] (1973); *Herrman v. Folkerts,* 202

Kan. 116, 446 P.2d 834, 837[3] (1968); *Kraus v. Allstate Ins. Co.,* 258 F.Supp. 407, 412[9] (W.D.Pa.1966); *Isenhart v. General Cas. Co. of America,* 233 Or. 49, 377 P.2d 26, 28[2] (1962); *Georgia Cas. Co. v. Alden Mills,* 156 Miss. 853, 127 So. 555, 557 (1930); 44 C.J.S. Insurance § 242b, p. 1006.

The judgment is affirmed.

GREENE, C.J., and TITUS and CROW, JJ., concur.