EDWARD R. ARDINI, JR., JUDGE
*728 The View Home Owner's Association ("the VHOA") appeals from the grant of summary judgment in favor of The Burlington Insurance Company ("TBIC") on the VHOA's claims for breach of contract and bad faith failure to defend relating to a commercial general liability insurance policy. Finding no error, we affirm.
Factual and Procedural Background
The View, LLC ("The View") is a Missouri Limited Liability Company, formed in June of 2003, which owned a building situated on a parcel of property at 600 East Admiral Boulevard in Kansas City ("the property"). The building had been originally designed and built for use as residential living during the 1960s, but had been vacant for many years and had been partially demolished by the time of its acquisition by The View. In July of 2004, The View entered into a contract with the Planned Industrial Expansion Authority of Kansas City ("the PIEA contract"), the latter having previously found the property to be a "blighted area." Under the terms of the PIEA contract, The View agreed to ameliorate the blighted condition of the property by re-developing it into condominium units. Construction on the project began in 2005.
In June of 2005, The View filed Declarations of Restrictions with the Jackson County Office of the Register of Deeds relating to the proposed condominium units. Under the terms of these declarations, the property became subject to the provisions of Missouri's Uniform Condominium Act ("MUCA"), which sets forth certain implied warranties regarding the fitness for use and freedom from defective materials or construction relating to the individual units. The View later began selling condominium units for residential use. All condominium purchasers became members of the VHOA as require under both the MUCA and the filed declarations.
In September of 2008, the View commenced an action against the VHOA and others seeking a declaratory judgment and injunctive relief concerning matters that are not relevant to this appeal. The VHOA responded by asserting a counterclaim alleging that The View's renovation of the property had been negligent and that there remained numerous issues concerning the property's construction. For example, the VHOA alleged that the concrete balconies showed signs of delaminating, deteriorating, cracking, and spalling among other issues. The VHOA further alleged that the defects constituted a failure by The View to perform its material duties under the terms of the condominium sales contracts as well as the PIEA contract.
The View tendered the defense of the VHOA's counterclaim to TBIC, who had previously issued The View a commercial general liability insurance policy on the property ("the policy"). TBIC reviewed the counterclaim and the terms of the policy, concluded that the policy did not cover the claimed defects being raised by the VHOA, and communicated this decision to The View. After receiving TBIC's reply, The View entered into a release agreement with the VHOA pursuant to Missouri Revised Statute section 537.065.
*729 Under the terms of the release, The View agreed not to contest the VHOA's request for judgment on its counterclaim or otherwise object to evidence, cross-examine witnesses, call its own witnesses, introduce evidence, or offer an opening statement or closing argument. The View also assigned its claims against TBIC for breach of contract and bad faith failure to defend regarding the policy to the VHOA. In exchange, the VHOA agreed to limit the execution of any judgment it received against The View to assets recovered from TBIC. Once the release was entered into, the trial court heard evidence on the VHOA's counterclaim, entered judgment against The View, and awarded the VHOA $3,964,209.00 in damages relating to the costs to repair the construction deficiencies that had been alleged.
Having obtained a judgment against The View, the VHOA exercised the rights that had been assigned to it by The View and commenced the underlying suit against TBIC.[1] TBIC responded by filing a motion for summary judgment, and the VHOA countered with its own motion for partial summary judgment. A hearing was held on the cross motions for summary judgment, after which the trial court granted TBIC's motion and entered judgment in its favor and against the VHOA on each count. The VHOA now appeals.
Standard of Review
"Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Doe Run Resources Corp. v. American Guarantee & Liability Insurance , 531 S.W.3d 508, 511 (Mo. banc 2017). "The propriety of summary judgment is purely an issue of law" and our review of a trial court's granting of summary judgment is essentially de novo. ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993). In performing this review, we evaluate the record, and all reasonable inferences made therefrom, in the light most favorable to the party against whom judgment was entered. Id.
Analysis
The VHOA's first point on appeal contends that the trial court erred in granting summary judgment in favor of TBIC because there existed a genuine dispute of material fact regarding whether TBIC had a duty under the policy to defend The View against the counterclaim brought by the VHOA in the original lawsuit. However, a careful review of the arguments raised by the VHOA does not reveal any material facts that are claimed to be in dispute. Instead, the arguments made in the VHOA's first point challenge the trial court's interpretation of various terms and exclusions found in the policy. It is well settled that "[t]he interpretation of an insurance contract is a question of law." Doe Run Resources Corp. , 531 S.W.3d at 511. Therefore, the actual argument presented in the VHOA's first point is that the trial court erred in granting summary judgment because TBIC was not entitled to judgment as a matter of law. Despite this apparent error in the design of the VHOA's first point, we will nevertheless consider the arguments raised by the VHOA's first point on the merits.
"An insurer's duty to defend is broader than its duty to indemnify." Allen v. Bryers , 512 S.W.3d 17, 31 (Mo. banc 2016). To determine if an insurer owed a duty to defend a claim initiated against an *730 insured, we compare the language of the policy with any facts: "(1) alleged in the petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case." Id. (quoting Allen v. Cont'l W. Ins. Co. , 436 S.W.3d 548, 553 (Mo. banc 2014) ). "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." Id. (quoting Columbia Cas. Co. v. HIAR Holding, LLC , 411 S.W.3d 258, 265 n.10 (Mo. banc 2013) ). In practical terms, this means that "[t]o extricate itself from the duty to defend the insured, the insurance company must prove that there is no possibility of coverage" under the policy. Id. (quoting Truck Ins. Exch. v. Prairie Framing, LLC , 162 S.W.3d 64, 79 (Mo. App. W.D. 2005) ) (emphasis in original).
The policy issued by TBIC is a standard form commercial general liability policy designed to protect the insured against liability for accidental damages to the person and property of third parties. See American States Ins. Co. v. Mathis , 974 S.W.2d 647, 649 (Mo. App. E. D 1998). "The intent of such policies is to protect against the unpredictable and potentially unlimited liability that can result from accidentally causing injury to other persons or their property." Id. However, these types of policies generally are "not intended to protect business owners against every risk of operating a business." Columbia Mut. Ins. Co. v. Schauf , 967 S.W.2d 74, 77 (Mo. banc 1998). In particular, they often exclude from coverage those risks that "business management can and should control and manage." Id. Such exclusions are premised on the simple understanding that "general liability coverage is not intended as a guarantee of the quality of an insured's product or work." Id. ; see also Mathis , 974 S.W.2d at 649 ("[A] CGL policy does not serve as a performance bond, nor does it serve as a warranty of goods or services.").
In this case, the underlying litigation by the VHOA against The View concerned claims for breach of contract and negligence. Specifically, the VHOA alleged that the property suffered from a variety of defects and poor workmanship due to The View's negligence in overseeing the renovation project and that these defects constituted breaches of both the PIEA contract and the implied warranties incorporated into the individual condominium sales contracts. The VHOA now argues that these deficiencies were covered "property damage" as defined by the policy and thus gave rise to TBIC's duty to defend. In doing so, the VHOA is effectively seeking to extend the scope of coverage under the policy beyond the bounds of a traditional general liability policy to include insuring the quality of the work performed. Adoption of this argument would convert the policy at issue into a performance bond or general warranty on the quality of the final renovation work. This would be inconsistent with generally accepted parameters of commercial general liability policies and, more importantly, would ignore several key provisions in this particular policy that limit coverage and exclude claims relating to construction-related workmanship.
To begin, the policy clearly states that the duties to indemnify and defend do not attach to every form of "property damage" that may be alleged but rather only to those "to which [the] insurance applies." The policy further plainly provides that the insurance only applies if the "property damage" being alleged was the result of an "occurrence," which is defined by the policy to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Several courts considering policies bearing similar language have held that this provision and accompanying definitions preclude coverage for claims stemming from defective construction and substandard *731 workmanship. In American States Insurance Company v. Mathis , for example, an insurer brought an action for declaratory judgment to establish that it had no duty to defend or indemnify a sub-contractor to whom it had issued a commercial general liability policy against claims for negligence and breach of contract arising from alleged defects in the work of the sub-contractor. Mathis , 974 S.W.2d at 648. The insurer successfully argued that the sub-contractor's failure to properly perform the construction work outlined in the contract did not constitute an "occurrence" as defined by the policy and hence there was no "property damage" subject to coverage. Id. In reaching this conclusion, the Mathis court first defined the term "accident" according to its common meaning as "an event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event." Id. It then found that:
[t]he cause of [plaintiff's] loss was [sub-contractor's] failure to construct the ducts according to contract specifications. Such a breach of a defined contractual duty cannot fall within the term "accident." Performance of its contract according to the terms specified therein was within [sub-contractor's] control and management and its failure to perform cannot be described as an undesigned or unexpected event.
Id. at 650 ; see also Hawkeye-Security Ins. Co. v. Davis , 6 S.W.3d 419, 421, 425-26 (Mo. App. S.D. 1999) (In a declaratory judgment action brought by insurance company to determine whether a commercial general liability insurance policy it had issued to contractor required insurer to defend contractor against suit brought by homeowners who claimed contractor had failed to build their house in a workmanlike manner, court determined that homeowners' losses stemmed solely from contractor's breach of contractual obligations including express and implied warranties which could not fall within the term accident meaning that there was no "occurrence" as defined in the policy and hence insurer had no duty to defend.).
We find the analysis in Mathis and Davis to be applicable to the case now before us. The View, as owner, had control and management over the property during the renovation. This naturally included the ability to resolve any alleged construction deficiencies in the property as well as remediate substandard work. Because the ability to resolve these construction deficiencies was within The View's control and management, its failure to address them cannot be described as an "undesigned or unexpected event," and thus there was no "accident." Because there was no "accident," there was no "occurrence" within the meaning of the policy, no "property damage" to which the policy applied, and hence no duty on the part of TBIC to defend The View.
The policy's language limiting coverage to only property damage arising from an "occurrence" is consistent with the principles underlying commercial general liability policies as outlined by the Supreme Court in Schauf . See Schauf , 967 S.W.2d at 77 ("[G]eneral liability coverage is not intended as a guarantee of the quality of an insured's product or work"). As a result, this provision independently compels the conclusion that the policy issued by TBIC did not cover the VHOA's claims. However, even if we were to accept the argument that the construction deficiencies and poor workmanship arose out of or constituted an "occurrence"-a notion we reject-the "Designated Operations" exclusion would provide an alternative basis for concluding that the policy did not cover "property damage" relating to the quality of construction.
The Designated Operations exclusion is found in a separate endorsement to the policy and reads as follows: "[t]his *732 insurance does not apply to 'bodily injury' of 'property damage' arising out of the operations and/or completed operations described in the Schedule of this endorsement...." The schedule of the endorsement goes on to describe the term "Designated Completed Operations" as "any construction." When read together, this exclusion establishes that the policy did not cover-and thus TBIC had no duty to defend-any claim for "property damage" arising from completed construction.
The gravamen of the claims brought by the VHOA against The View was the deficiencies in the completed construction of the property as well as VHOA's resulting displeasure that the work did not meet specifications. The Designated Operations exclusion would thus on its face clearly bar coverage for this type of claim. The VHOA attempts to avoid this natural conclusion by asserting that construction on the project was not yet "complete" at the time it initiated its suit against The View and points to the fact that several building permits still "remained open" at that time. This effort to divert attention to the existence of pending building permits misses the mark as such ancillary facts provide no basis to reframe the VHOA's claims as anything but complaints grounded in the condition of completed construction. Moreover, the flaw in the VHOA's reliance on the building permits to avoid the exclusion for completed construction is exposed by its own petition filed in the underlying suit that acknowledged the permits only remained open because "the work was not completed satisfactorily and/or the final inspections were not completed." Accepting the VHOA's position that the complained of construction could not be considered complete because it had not been "completed satisfactorily" would lead to an absurd result. Under such a theory, the Designated Operations exclusion would bar coverage for claims of construction deficiencies only if construction was "complete," but construction would be deemed "complete" only after all defects and deficiencies in the property's construction had been satisfactorily resolved. Not only would this circular analysis essentially render the Designated Operations exclusion nonfunctional and irrelevant, it would effectively convert the policy into an indefinite and complete warranty on the quality of the work.
Missouri courts have long recognized that "[i]t is preferable to harmonize all provisions of a policy, rather than leave some provisions nonfunctional or nonsensical." The Renco Group, Inc. v. Certain Underwriters at Lloyd's, London , 362 S.W.3d 472, 478 (Mo. App. E.D. 2012) (quoting Nodaway Valley Bank v. E.L. Crawford Const., Inc. , 126 S.W.3d 820, 827 (Mo. App. W.D. 2004) ). Consequently, we reject the VHOA's argument that the complained about construction was not "complete" because it was not "completed satisfactorily." Instead, we read the Designated Operations exclusion to exclude claims directed at the workmanship of, or construction deficiencies resulting from, the renovation of the property.
Having considered all of the policy provisions discussed herein, we find that none of the claims raised in the VHOA's suit against The View were covered by the policy and TBIC had no duty to defend The View against the same. The trial court consequently did not err in finding TBIC was entitled to judgment as a matter of law on the VHOA's claim for breach of the duty to defend. The VHOA's first point is denied.
The VHOA's second point on appeal is nearly identical to its first point on appeal. The only distinction is that the second point argues that there was a genuine dispute of material fact regarding whether TBIC possessed a duty to indemnify rather than defend The View. However, *733 Missouri law is clear that "[w]here there is no duty to defend, there is no duty to indemnify." Brand v. Kansas City Gastroenterology & Hepatology, LLC , 414 S.W.3d 546, 556 (Mo. App. W.D. 2013) (quoting Am. States Ins. Co. v. Herman C. Kempker Constr. Co. , 71 S.W.3d 232, 236 (Mo. App. W.D. 2002) ). Because we have found that the trial court did not err in granting TBIC's motion for summary judgment on the VHOA's claim for breach of the duty to defend, we also find that the trial court did not err in granting summary judgment on the VHOA's claim for breach of the duty to indemnify. The VHOA's second point is denied.
The VHOA's third point on appeal contends that the trial court erred in granting summary judgment on its claim for bad faith in refusing to defend or indemnify The View. Much as with the VHOA's second point, "where an insurer had no duty to defend or indemnify under the insurance policy, there cannot be a claim for vexatious refusal to defend or indemnify." Arch Insurance Company v. Sunset Financial Services, Inc. , 475 S.W.3d 730, 735 (Mo. App. W.D. 2015) ; see also Fischer v. First American Title Ins. Co. , 388 S.W.3d 181, 191 (Mo. App. W.D. 2012) (stating same). As we have already determined that TBIC had no duty to defend or indemnify The View, we necessarily conclude that the trial court did not err in granting summary judgment on the VHOA's claim for bad faith in refusing to defend or indemnify The View. The VHOA's third point is consequently denied.
Conclusion
The judgment of the trial court is affirmed.
All concur.

Specifically, the VHOA brought one count of breach of contract relating to TBIC's failure to defend and indemnify The View and one count of bad faith in failing to defend and indemnify The View.