# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-2050

_____

American Family Mutual Insurance Company, S.I.

*Plaintiff - Appellee*

v.

Mid-American Grain Distributors, LLC

*Defendant*

Lehenbauer Farms, Inc.

*Defendant - Appellant*

John Ayer

*Defendant*

_____

No. 19-2171

_____

American Family Mutual Insurance Company, S.I.

*Plaintiff - Appellee*

v.

Mid-American Grain Distributors, LLC

*Defendant - Appellant*

Lehenbauer Farms, Inc.; John Ayer

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - Hannibal

_____

Submitted:  March 12, 2020
Filed:  May 12, 2020

_____

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Mid-American Grain Distributors, LLC ("Mid-American") and Lehenbauer Farms, Inc. ("Lehenbauer") appeal the district court's[1] grant of summary judgment in favor of American Family Mutual Insurance Company, S.I. ("American Family"). We affirm.

**I.**

American Family is a Wisconsin-based insurance company.  It issued a commercial general liability insurance policy ("CGL") to Mid-American, a Missouri resident, for the policy period of June 14, 2014, to June 14, 2015, and the CGL was renewed for the 2015-2016 policy period.  As relevant here, the CGL provided coverage for "property damage" that is caused by an "occurrence."  The CGL defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

_____

[1]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri.

In February 2015, Mid-American entered into an oral contract with Lehenbauer, also a Missouri resident. Under this agreement, Mid-American was to design and construct a grain storage and distribution facility for Lehenbauer. Mid-American performed work under this agreement from February 2015 until March 2016, at which time Lehenbauer terminated Mid-American's services.

Four months later, Mid-American sued Lehenbauer in Missouri state court for breach of contract. Lehenbauer counterclaimed against both Mid-American and its managing agent John Ayer (a Missouri resident), alleging among other things breach of contract, breach of "implied dut[ies] of workmanlike performance and fitness for a particular purpose," and negligence. The basic factual predicate underlying these counterclaims and giving rise to Lehenbauer's alleged damages was "a multitude of design and construction issues" with Mid-American's work. Lehenbauer asserted damages in excess of $75,000.

Mid-American tendered these counterclaims to American Family pursuant to the CGL, which imposed on American Family a duty both to defend its insureds "against any 'suit'" seeking covered damages and to indemnify them if liable for such damages. American Family accepted this tender under a reservation of rights.

Approximately two years later, American Family filed this action against Mid-American, Ayer, and Lehenbauer in federal district court, seeking a declaratory judgment that no coverage exists under the CGL for Lehenbauer's counterclaims and thus American Family had no duty to defend or indemnify its insureds against them. American Family later moved for summary judgment "limited solely to the dispositive issue of whether the counterclaims . . . allege an 'occurrence'" under the CGL. The district court granted American Family summary judgment, concluding that, under Missouri law, the counterclaims did not allege an occurrence. *See Am. Family Mut. Ins. Co. S.I. v. Mid-American Grain Distribs., LLC*, No. 2:18-cv-00051-HEA, 2019 WL 1745786, at *2-3 (E.D. Mo. Apr. 17, 2019). Lehenbauer and Mid-American appeal, challenging this conclusion.

## II.

### A.

The parties agree that Missouri substantive law governs the interpretation of the CGL in this diversity action. *See Fed. Ins. v. Great Am. Ins.*, 893 F.3d 1098, 1102 (8th Cir. 2018). "Where no Missouri Supreme Court precedent exists on an issue, we 'predict what that court would decide' and consider intermediate appellate court decisions in that process." *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012) (quoting *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011)).

"We review the district court's summary-judgment decision, including its interpretation of the contract and state law, de novo." *Yang v. Farmers New World Life Ins.*, 898 F.3d 825, 827 (8th Cir. 2018). "Summary judgment is proper if there is no genuine issue of material fact and the insurers are entitled to judgment as a matter of law." *Horizon Plumbing*, 670 F.3d at 861.

American Family has asserted it owes no duties to defend or indemnify Mid-American under the CGL because Lehenbauer's counterclaims do not come within the scope of the CGL's grant of coverage for damages caused by an "occurrence." "Even though it is an insurer that brings a declaratory judgment action, the insured has the burden of proving that the underlying action is covered by the insurance policy." *Shelter Mut. Ins. v. Ballew*, 203 S.W.3d 789, 792 (Mo. Ct. App. 2006).

Because the duty to defend is implicated here, however, the insured's burden is slightly different. "The duty to defend is broader than the duty to indemnify." *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins.*, 989 S.W.2d 168, 170 (Mo. 1999). The duty to defend "arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case," and the question whether the duty to defend exists is generally "determined by comparing the language of the insurance policy with the allegations in the [underlying] complaint." *Id.* "If the

-4-

complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Allen v. Bryers*, 512 S.W.3d 17, 31 (Mo. 2016). In other words, at this stage, Mid-American has the burden to establish that Lehenbauer's counterclaims are potentially within the CGL's coverage. *See Rice Painting Co. v. Depositors Ins.*, No. 4:15-CV-1064-JMB, 2017 WL 5564559, at *3 (E.D. Mo. Nov. 20, 2017) (noting that "[t]he insured has the burden under Missouri law of proving this possibility of coverage" to implicate the duty to defend).

If Mid-American carries this burden, American Family may have a duty to defend. If Mid-American does not carry this burden, American Family has no duty to defend or indemnify Mid-American in the underlying litigation, *see Am. States Ins. v. Herman C. Kempker Constr. Co.*, 71 S.W.3d 232, 236 (Mo. Ct. App. 2002), meaning summary judgment in American Family's favor was proper.

B.

The only point at issue on appeal is whether Lehenbauer's counterclaims allege damages caused by "an 'occurrence'" so as to come within the scope of coverage in the CGL. The CGL defines "occurrence" as "an accident." The CGL does not define "accident," but Missouri gives the term "accident" in a CGL its "common meaning"; namely, "an event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event." *View Home Owner's Ass'n v. The Burlington Ins.*, 552 S.W.3d 726, 731 (Mo. Ct. App. 2018).

An intentional act can be an "accident" under Missouri law. *Fid. & Cas. Co. of N.Y. v. Wrather*, 652 S.W.2d 245, 249 (Mo. Ct. App. 1983). The "determinative inquiry" to determine whether an act is an "accident" is "whether the insured foresaw or expected the injury or damages" that resulted from the act. *D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins.*, 316 S.W.3d 899, 905 (Mo. 2010). An "accident" does not include acts that result in "expected or foreseeable damage." *Id.*

But foreseeable to whom—the actual insured, subjectively speaking, or a reasonable insured, objectively speaking? *See Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 882 P.2d 703, 712 (Wash. 1994) (recognizing that questions of expectation in this context "may be said to involve state of mind, but that does not resolve the inquiry whose state of mind—the insured's or a reasonable person's"). This distinction is critical because judgment as a matter of law on the question of foreseeability may be inappropriate under a subjective standard in circumstances where it would be appropriate under an objective standard. *See Shelter Mut. Ins. v. Parrish*, 659 S.W.2d 315, 320 (Mo. Ct. App. 1983) (recognizing that this is a "crucial inquiry," applying an objective standard, and holding "as a matter of law" the underlying incident "was not an 'occurrence'" when "viewed objectively").

The parties have not cited, and we have not found, a Missouri Supreme Court decision expressly addressing whether an objective or subjective standard governs the foreseeability inquiry in this context. *D.R. Sherry Construction* lends some support to the notion that a subjective standard applies. 316 S.W.3d 899. There, the court looked to evidence proffered at trial that the insured subjectively "did not foresee" the damages at issue before affirming that "the cause of the damage . . . constituted an insurable 'occurrence.'" *Id.* at 905-06.

Missouri Court of Appeals decisions, however, point in opposite directions on whether an objective or subjective standard applies to the foreseeability inquiry. *Compare Lewellen v. Universal Underwriters Ins.*, 574 S.W.3d 251, 262 (Mo. Ct. App. 2019) ("[I]n reviewing the insured's foresight . . . we employ an objective standard . . . ."), *with Am. Family Mut. Ins. v. Franz*, 980 S.W.2d 56, 58 (Mo. Ct. App. 1998) (discussing how Missouri decisions have "focused upon the [subjective] expectations of the insured rather than upon the hypothetical reasonable person and foreseeability"). We do not need to explore the nuances of the seemingly conflicting caselaw or pick a side in this debate. In light of a series of Missouri Court of Appeals decisions on all fours with the relevant facts of this case, we conclude that foreseeability may be "inferred as a matter of law" given the "nature or character of the act" and the type of damages at issue here, *see Travelers Ins. v. Cole*, 631 S.W.2d

-6-

661, 664 (Mo. Ct. App. 1982), even if a subjective standard ordinarily applies, *see Franz*, 980 S.W.2d at 58-59.

*American States Insurance Co. v. Mathis* is the leading Missouri case on this point. 974 S.W.2d 647 (Mo. Ct. App. 1998). There, the claimant alleged damages from having to remove and replace the insured's improperly installed construction work and brought claims against the insured for breach of contract and negligence, among other things. *Id.* at 648. The CGL at issue provided coverage for damages caused by "an 'occurrence,'" defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* The insured tendered these claims to its insurer for defense. *Id.* The insurer undertook a defense under a reservation of rights and later filed a declaratory judgment action to resolve its duty to defend and indemnify under the CGL. *Id.* The trial court granted the insurer summary judgment on the basis that "the conduct which caused the damage was not an 'occurrence' as defined in the policy." *Id.*

The court of appeals affirmed. *Id.* at 650. It reasoned that a CGL of this kind does not "guarantee . . . technical competence" or "serve as a performance bond" or "warranty of goods or services." *Id.* at 649. And it recognized that "an accident" does not include "business operations" causing damages that are the "predictable consequence" of those operations. *Id.* The underlying act, defective construction work, resulted in damages that were the "normal" consequence of that act, such as costs to repair and replace that work, thus the shoddy work could not "be described as an undesigned or unexpected event" to constitute an "accident" within the meaning of the CGL. *Id.* at 649-50.

Two later decisions, including one postdating *D.R. Sherry Construction*, follow and apply *Mathis*. *See View Home Owner's Ass'n*, 552 S.W.3d at 728-31; *Hawkeye Sec. Ins. v. Davis*, 6 S.W.3d 419, 421-22, 425-26 (Mo. Ct. App. 1999). In both of these cases:

- The CGL at issue provided coverage for damages caused by "an 'occurrence,'" defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *View Home Owner's Ass'n*, 552 S.W.3d at 730; *Davis*, 6 S.W.3d at 425.
- The insured was accused of shoddy workmanship. *See View Home Owner's Ass'n*, 552 S.W.3d at 728, 730 (noting the problem was "numerous issues concerning the property's construction"); *Davis*, 6 S.W.3d at 421 (alleging the insured's failure to build a house "in a workmanlike manner").
- The key issue on appeal was whether the insured's shoddy workmanship could constitute an "occurrence." *View Home Owner's Ass'n*, 552 S.W.3d at 729-31; *Davis*, 6 S.W.3d at 422.
- The damages in question were the inherent results of that shoddy workmanship. *See View Home Owner's Ass'n*, 552 S.W.3d at 729 (noting the damages were "the costs to repair the construction deficiencies"); *Davis*, 6 S.W.3d at 426 (noting the damages were the "result of defective work").
- The court held there was no "occurrence." *View Home Owner's Ass'n*, 552 S.W.3d at 730-31; *Davis*, 6 S.W.3d at 425-26.

As they involve essentially the same facts and issues present in this case, *Mathis*, *Davis*, and *View Home Owner's Association* dictate the same outcome here—Mid-American's alleged defective construction work is not an "occurrence." That said, we recognize language in these cases suggesting the key point is that the claim for damages sounds in contract or that the insured had control over its work. *See View Home Owner's Ass'n*, 552 S.W.3d at 731; *Davis*, 6 S.W.3d at 426; *Mathis*, 974 S.W.2d at 650. We also recognize that the Missouri Supreme Court in *D.R. Sherry Construction* announced that the "determinative inquiry into whether there was an 'occurrence' or 'accident' is whether the insured foresaw or expected the injury or damages," 316 S.W.3d at 905, not whether the claim for damages sounds in contract or whether the insured had control over its acts causing the damages.

Whatever force these other rationales might retain post-*D.R. Sherry Construction*, we need not and do not rely on them here because, as indicated above, we find another rationale at work in *Mathis* consistent with the foreseeability rule.

The *Mathis* court not only found that the insured's faulty workmanship was in its control and constituted breach of contract but also that the resulting damages were the "normal, expected consequence" of this work and thus "not an occurrence." 974 S.W.2d at 650. This language intimates what Missouri courts have made explicit elsewhere: courts will "infer, as a matter of law," that the insured had the relevant state of mind precluding coverage when the damages resulting from the insured's acts are the "natural and probable consequences" of those acts. *Franz*, 980 S.W.2d at 58-59; *see also Parrish*, 659 S.W.2d at 319-20 (concluding that the injury resulting from the insured's action was "expected or intended" as a matter of law, rendering the insured's subjective expectation and intent "of no moment," because the injury was the "natural and probable consequence[]" of that action (internal quotation marks omitted)).

Thus, *Mathis* supports the proposition that the "normal, expected" damages of shoddy workmanship are foreseeable or expected as a matter of law in Missouri, meaning such work is not an "accident" when resulting in such damages. *See* 974 S.W.2d at 650; *see also Bituminous Cas. Corp. v. Scottsdale Ins.*, No. 1:12-CV-84-SNLJ, 2013 WL 5739034, at *4 (E.D. Mo. Oct. 22, 2013) (relying on *Mathis* to hold the insured's "defective work" was not an "occurrence" where the resulting damages were a "foreseeable consequence" of the work). In *Mathis*, *Davis*, and *View Home Owner's Association*, the damages were the normal, expected consequence of the insured's shoddy work, such as "costs to repair the construction deficiencies," *View Home Owner's Ass'n*, 552 S.W.3d at 729, "work required to correct, repair, or replace inferior materials or remedy defective construction," *Davis*, 6 S.W.3d at 421, and costs "to remove and replace" defective work and "repair and replace" other equipment damaged due to that work, *Mathis*, 974 S.W.2d at 648, 650. The damages were thus foreseeable or expected as a matter of law, meaning the insured's shoddy workmanship was not an "accident." *See D.R. Sherry Constr.*, 316 S.W.3d at 905.

We find additional support for this application of *Mathis* in cases applying Missouri law involving construction work where the court concluded there was an "occurrence." In *D.R. Sherry Construction*, for instance, the Missouri Supreme

Court found coverage under a CGL where the damages to a home built by the insured did not flow from shoddy work but rather resulted from the fact "that the home inadvertently was constructed on soil that was incapable of providing adequate support." 316 S.W.3d at 901-02, 906. In *Republic-Vanguard Insurance Co. v. Central State Holdings, LLC*, the district court held that the "defective work" by the insured was an "accident" under a CGL where the damages were the result of a fire caused "*inter alia*" by the defective work. No. 4:16CV1616 HEA, 2018 WL 7286031, at *1-3 (E.D. Mo. Dec. 2, 2018). The shoddy work, in other words, was only an indirect and partial cause of the damages. In these cases, the damages were not a "normal, expected consequence" of the insured's work, *see Mathis*, 974 S.W.2d at 650, so they were not foreseeable or expected as a matter of law.

Following this rationale, we ask whether Lehenbauer's damages are the "normal, expected consequence" of Mid-American's allegedly shoddy work. *See id.* As pleaded, Lehenbauer's damages all flow directly from the "multitude of design and construction issues" with Mid-American's work. Specifically, Lehenbauer claims damages in the form of costs it "has and will incur" to "investigate," "identify," and "correct [Mid-American's] defective design and workmanship" and in the form of lost profits Lehenbauer "has and will suffer" due to Mid-American's work. Just like the damages resulting from the insured's work in *Mathis*, *Davis*, and *View Home Owner's Association*, Lehenbauer's damages are the "normal, expected consequence" of Mid-American's work. *See Mathis*, 974 S.W.2d at 650. They are thus foreseeable as a matter of law, so Mid-American's work is not an "accident," and thus not an "occurrence," under the CGL.

C.

Lehenbauer and Mid-American raise a number of counterarguments to this conclusion. We find none of them availing.

-10-

First, Lehenbauer and Mid-American focus on the fact that one of Lehenbauer's causes of action is "negligence," arguing we have previously recognized that "Missouri case law clearly holds that accidents resulting from the insured's negligent behavior fall within the definition of occurrence." *Koch Eng'g Co. v. Gibralter Cas. Co.*, 78 F.3d 1291, 1294 (8th Cir. 1996); *see also Assurance Co. of Am. v. Secura Ins.*, 384 S.W.3d 224, 235 (Mo. Ct. App. 2012) (noting that "negligent conduct" is "encompassed by a liability policy providing coverage for an 'occurrence' defined as an 'accident'"). But, as discussed above, the "determinative inquiry" under Missouri law is the foreseeability or expectation of damages caused by the insured's acts. *D.R. Sherry Constr.*, 316 S.W.3d at 905. If the damages are foreseeable, the act is not an "accident" regardless of its ostensibly "negligent" nature. In other words, the fact that the damages "resulting from an insured's negligence . . . *may* be 'caused by accident'" does not mean that they always will be. *See White v. Smith*, 440 S.W.2d 497, 508 (Mo. Ct. App. 1969) (emphasis added); *see also Guideone Am. Ins. v. Perry*, No. 2:15-cv-2085-SHL-cgc, 2016 WL 7497583, at *3 (W.D. Tenn. Apr. 12, 2016) ("[A]n unintentional negligent act is not accidental if the results of the act were foreseeable or expected by the actor."). Here, the damages caused by Mid-American's allegedly shoddy work were foreseeable as a matter of law, so that work is not an "accident" no matter how it is characterized.

Second, Lehenbauer argues that Missouri recognizes the "primary purpose" of CGLs is "to protect the insured against losses to third parties arising out of the operation of the insured's business," which is what Mid-American seeks here. But Missouri also recognizes that CGLs are "not intended as a guarantee of the quality of an insured's product or work." *Columbia Mut. Ins. v. Schauf*, 967 S.W.2d 74, 77 (Mo. 1998). Finding coverage for the damages at issue here would convert the CGL into a "guarantee of the quality" of Mid-American's work, contrary to *Schauf*.

Third, Lehenbauer and Mid-American try to distinguish *Mathis*, *Davis*, and *View Home Owner's Association* by arguing that those cases involved "definite or specific contractual terms," not an oral contract with ostensibly no express terms like the contract at issue here. *See Assurance Co. of Am.*, 384 S.W.3d at 234 (reading

-11-

*Mathis* and *Davis* to "stand for the proposition that failure to perform work according to defined contractual specifications and duties . . . does not fall within the meaning of accident or occurrence"). We are not persuaded that these cases can be cabined in this way. *See Bituminous Cas. Corp.*, 2013 WL 5739034, at *1-2, *4 (applying *Mathis* to conclude that an insured's "defective work" pursuant to an oral agreement was not an "occurrence"). Regardless, contrary to Lehenbauer's argument that the parties "did not prepare or agree to any design or construction plans or specifications," its own averments reveal that this oral agreement "contemplated" various specifics "called and paid for" under the contract.

Fourth, Lehenbauer argues that the conclusion we draw here about the scope of coverage would make other provisions of the CGL (particularly exclusions) surplusage, contrary to Missouri principles of policy interpretation. *See Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 474 (Mo. Ct. App. 2013) ("We must endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant."). In essence, Lehenbauer "urge[s] us to analyze and find ambiguity in the policy because of [an] exclusion . . . , and, as a consequence, declare there is coverage for their losses." *See Davis*, 6 S.W.3d at 427. But "[w]e have already determined that" there is no "'occurrence' within the meaning of the policy," *see id.*, and we cannot adopt a "strained interpretation" of the CGL's coverage provisions "in order to create an ambiguity where none exists," *see Haggard Hauling & Rigging Co. v. Stonewall Ins.*, 852 S.W.2d 396, 401 (Mo. Ct. App. 1993).

The possibility of an exclusion being "arguably redundant" with the scope of coverage does not justify reading coverage into the CGL that is not there. *See Lambi v. Am. Family Mut. Ins.*, No. 4:11-CV-00906-DGK, 2012 WL 2049915, at *4, *6-7 (W.D. Mo. June 6, 2012). It is not always out of bounds to find that an act is "not an 'Occurrence' as defined by the policy" even if that act is "also excluded from coverage." *See Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 162 (Mo. 2007); *D.M.A. v. Hungerford*, 488 S.W.3d 683, 688 (Mo. Ct. App. 2016) (concluding that an act "was not an 'Occurrence'" and also that it was "explicitly

excluded from coverage"); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176-77 (2012) (noting that the surplusage canon must be applied with "careful regard to context" and that it "cannot always be dispositive" because "[s]ometimes drafters *do* repeat themselves," as when engaging in the "common belt-and-suspenders approach").

## III.

Lehenbauer's damages are all the normal, expected consequence of Mid-American's allegedly shoddy work and were the foreseeable or expected result of that work as a matter of law. As such, Mid-American's work causing these damages is not "an accident" within the meaning of the CGL under Missouri law. As there was no "accident" here, there is no "occurrence" and no possibility of coverage. American Family thus has no duty to defend or indemnify. Therefore, we affirm.

_____