The DOE RUN RESOURCES
CORPORATION,
Respondent,

v.

AMERICAN GUARANTEE & LIABIL-
ITY INSURANCE and Lexington In-
surance Company, Defendants,

and

St. Paul Fire and Marine Insurance
Company, Appellant.

No. SC 96107

Supreme Court of Missouri,
en banc.

Opinion issued October 31, 2017

St. Paul was represented by Robert T. Haar and Lisa A. Pake of Haar & Woods LLP in St. Louis, (314) 241-2224; David M. Fedder and Deborah C. Campbell of Dentons US LLP in St. Louis, (314) 440-6901; and Robert C. Johnson of Dentons US LLP in Chicago, Illinois, (312) 876-8000.

Doe Run was represented by Jamie L. Boyer of Stinson Leonard Street LLP in St. Louis, (314) 259-4546; and Marc D. Halpern, Vince H. Herron and Heather L. Mayer of Abelson Herron Halpern LLP in San Diego, California, (619) 618-7000.

Mary R. Russell, Judge

The Doe Run Resources Corporation was sued by several minor plaintiffs allegedly injured by toxic pollution released from Doe Run's smelting facility in La Oroya, Peru. Doe Run sued its insurer, St. Paul Fire and Marine Insurance Company, for reimbursement of defense costs incurred during the litigation of these claims. St. Paul denied any duty to defend Doe Run, alleging coverage was barred under the insurance policy's pollution exclusion. The circuit court entered summary judgment in favor of Doe Run, finding the pollution exclusion ambiguous and unenforceable. St. Paul appeals. Because the pollution exclusion is not ambiguous, coverage is barred and St. Paul has no duty to defend Doe Run. The judgment is reversed, and this Court enters judgment in favor of St. Paul pursuant to Rule 84.14.[1]

## Background

Doe Run is a Missouri corporation that produces lead and lead concentrate

1. "Unless justice otherwise requires, the [appellate] court shall dispose finally of the case." Rule 84.14.

through its mining, milling, and smelting operations. While its primary business is in Missouri, Doe Run also houses a metallurgical industrial complex in La Oroya, Peru. In 2007, a class action lawsuit was filed against Doe Run on behalf of individuals living in the vicinity of the La Oroya facility, alleging bodily harm caused by exposure to toxic emissions emanating from Doe Run's facility. After the class action lawsuit was voluntarily dismissed, more than 25 minor plaintiffs filed individual lawsuits against Doe Run ("the Reid lawsuits"). Each lawsuit raises identical allegations that Doe Run released harmful substances, such as lead, arsenic, cadmium, and sulfur dioxide, into the environment. Plaintiffs claim these emissions created a dust that permeated the surrounding air and water, "enter[ing] and settle[ing] inside the minor plaintiffs' houses and . . . on . . . [their] furniture, clothing, water, and crops." Litigation in the Reid lawsuits is ongoing.

In 2010, Doe Run filed suit in St. Louis County Circuit Court against four insurance companies, not including St. Paul, seeking reimbursement of costs incurred defending against the Reid lawsuits.[2] Doe Run added St. Paul to the suit in 2012 under St. Paul's Commercial General Liability Policy. The policy provided two terms of general liability insurance to Doe Run, spanning from December 2005 to November 2007. Subject to its terms, conditions, and exclusions, the policy covers bodily injury and property damage arising during the policy period for any event occurring outside the United States.

St. Paul denied it was legally obligated to defend Doe Run, and both parties moved for summary judgment. St. Paul argued the policy's pollution exclusion

barred coverage of the underlying allegations in the Reid lawsuits. St. Paul also denied coverage under the policy's "other insurance" provision, which eliminates any duty to defend when the policy provides excess, rather than primary, coverage. In the alternative, St. Paul argued if the court did find a duty to defend, St. Paul need not reimburse Doe Run for any costs incurred before March 2012, when Doe Run first tendered to St. Paul the defense of the Reid lawsuits, and it did not owe Doe Run any prejudgment interest. Doe Run argued the pollution exclusion was ambiguous and, because ambiguous policies must be construed against the insurer, St. Paul could not avoid its duty to defend under the policy. Doe Run also argued St. Paul was a primary insurer of Doe Run and the policy's other insurance provision could have no preclusive effect on coverage. The trial court entered summary judgment in favor of Doe Run, finding the pollution exclusion ambiguous and that St. Paul is a primary insurer of Doe Run and, therefore, has a duty to defend.

Before a trial on damages, St. Paul filed a motion in limine to prevent Doe Run from recovering any defense costs incurred before it officially demanded defense from St. Paul. During the trial, St. Paul filed a motion for judgment under Rule 73.01, again arguing it could not legally be required to reimburse Doe Run for any costs incurred prior to Doe Run's tender of defense. The trial court denied both motions. It entered judgment against St. Paul and awarded Doe Run approximately $1.75 million for unpaid defense costs plus prejudgment interest. Two months later, the trial court entered its final judgment, reiterating its core findings as to St. Paul's duty to defend, St. Paul's

**2.** These cases have all been adjudicated. One insurer settled with Doe Run, and another was determined, through litigation, to owe

Doe Run a defense duty. The remaining two lawsuits were dismissed.

breach of that duty, and the damages owed. The court awarded Doe Run $2.1 million in damages and prejudgment interest and $12,000 in costs. St. Paul appeals.[3]

St. Paul asserts four points on appeal, arguing the trial court erred by: (1) finding St. Paul owes a duty to defend Doe Run because the unambiguous pollution exclusion bars defense coverage; (2) finding St. Paul has a duty to defend Doe Run because the other insurance provision precludes defense coverage; (3) awarding defense costs to Doe Run incurred before the March 2012 tender of the Reid lawsuits to St. Paul; and (4) awarding prejudgment interest to Doe Run. Because this Court finds the pollution exclusion unambiguous and enforceable, the trial court's judgment is reversed and judgment is entered in favor of St. Paul pursuant to Rule 84.14.

## Standard of Review

■ Appellate review of summary judgment is *de novo*. *ITT Comm'l Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.*

## Analysis

This case presents an issue of first impression for this Court: whether an insurance policy's general pollution exclusion bars defense coverage of a toxic tort claim arising from alleged industrial pollution. Because the pollution exclusion is unambiguous and bars coverage, St. Paul does not have a duty to defend Doe Run.

**3.** After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V,

## I. Interpreting Insurance Contracts

■ The interpretation of an insurance contract is a question of law and is given *de novo* review. *Mendenhall v. Prop. and Cas. Ins. Co. of Hartford*, 375 S.W.3d 90, 92 (Mo. banc 2012). When interpreting an insurance policy, this Court gives the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance. *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. banc 2008). If the policy language is clear and unambiguous, it must be construed as written. *Id.* An ambiguity exists only if a phrase is "reasonably open to different constructions." *Mendenhall*, 375 S.W.3d at 92. Courts may not create an ambiguity when none exists. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007).

## II. The Pollution Exclusion

The policy's pollution exclusion bars coverage for any injury or damage resulting from pollution on any protected person's premises. It provides in pertinent part:

### Exclusions—What This Agreement Won't Cover

. . .

*Pollution injury or damage.* We won't cover injury or damage or medical expenses that result from pollution at, on, in[,] or from any[ ] protected person's premises.

. . . .

*Pollution* means any actual, alleged, or threatened discharge, dispersal, escape, migration, release, or seepage of any pollutant.

*Pollutant* means any solid, liquid, gaseous, or thermal irritant or contaminant,

sec. 10.

including[ ] smoke, vapor, soot, fumes[,] acids, alkalis, chemicals[,] and waste.

*Protected person's premises* means any premises, site, or location that is or was at any time owned, rented, leased, borrowed, or occupied by any protected person.

The trial court found this language ambiguous, relying on *Hocker Oil Co. v. Barker–Phillips–Jackson, Inc.*, 997 S.W.2d 510 (Mo. App. 1999), which held a pollution exclusion not explicitly identifying gasoline as a pollutant was ambiguous as to a gasoline company, which considered gasoline a product, not a pollutant. *Id.* at 518.

St. Paul argued in its summary judgment motion that, as an outlier, *Hocker Oil* should not be followed. Further, it challenged *Hocker Oil's* applicability to these facts, arguing the Reid lawsuits allege no injury by Doe Run's products and the policy need not explicitly list "lead" or "metals" in the pollution exclusion for the court to find it unambiguous. Though the trial court found this argument "enticing," it elected to apply the *Hocker Oil* reasoning "[u]ntil our higher courts resolve the issue."

## III. The Pollution Exclusion is Unambiguous and Bars Coverage

Doe Run argues the pollution exclusion has many layers of ambiguity and is incapable of precluding defense coverage here. First, Doe Run maintains that whether lead is a pollutant—and covered by the exclusion—is ambiguous. Furthermore, Doe Run argues the underlying claims in the Reid lawsuits allege injuries caused by its commercial products. Because these commercial products—lead or lead concentrates—were not listed in the pollution exclusion, Doe Run contends it is ambiguous under *Hocker Oil* because an ordinary insured would not construe the policy to exclude the very business operations for which it purchased the coverage. St. Paul, in response, argues lead, in its particulate form, is unambiguously a pollutant, and the Reid lawsuits do *not* allege any injuries resulting from Doe Run's business products. This Court agrees.

### 1. Lead, in Particulate Form, is Clearly Excluded under the Policy

■ Doe Run contends, because lead is not unambiguously a contaminant or irritant, the pollution exclusion is ambiguous as to whether lead is a pollutant under the policy. This argument is incorrect. Though lead does have commercial value—particularly to Doe Run, a lead mining and smelting corporation—it is undoubtedly an irritant or contaminant when released as particulate matter into the environment.

■ "A court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate." *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991). Ambiguity exists when there is "duplicity, indistinctness, or uncertainty" in the contract language. *Id.*

■ St. Paul's policy does not define "irritant" or "contaminant." When a policy does not define a particular term, courts use the ordinary meaning of the word as set forth in the dictionary. *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 708 (Mo. banc 2011). An irritant is "something that irritates or excites" or "an agent by which irritation is produced." *Webster's Third New International Dictionary* 1197 (3d ed. 1993). To "irritate" is "to cause (an organ or tissue) to be irritable" or "to produce irritation." *Id.* "Contaminate" is defined as "to soil, stain, corrupt, or infect

by contact or association" or "to render unfit for use." *Id.* at 491.

An ordinary purchaser of insurance would not interpret this policy to exclude coverage for anything that could *potentially* irritate or contaminate. *Am. Nat. Prop. & Cas. Co. v. Wyatt*, 400 S.W.3d 417, 425 (Mo. App. 2013). Whether a material is an irritant or contaminant turns on the effect it has on its environment. *Williams v. Emp'rs Mut. Cas. Co.*, 845 F.3d 891, 906 (8th Cir. 2017) (applying Missouri law and concluding radium, though perhaps not harmful in all contexts, was a contaminant when it was present in the water supply and created a serious health risk for exposed individuals).

The Reid lawsuits allege harm caused by particulate matter released into the atmosphere in the vicinity of the Doe Run complex. The plaintiffs allege toxic chemicals are present in the air, water, and surrounding environment and these toxic chemicals are harmful to the individuals who breathe them. These claims certainly allege the existence of an irritant or contaminant under the ordinary meanings of the words; these emissions could be understood to both "produce irritation" and "corrupt" the breathable air, making it "unfit for use." Accordingly, the toxic emissions expelled from Doe Run's facilities are unequivocally a pollutant under the plain meaning of the term.

In determining whether there is a duty to defend, a court compares the language of the policy with the allegations in the complaint. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999). The effect of the pollution exclusion is clearly to proscribe the types of claims raised in the Reid lawsuits. The basic allegations are clear: toxic substances were in the air surrounding the La Oroya facility; these substances harm people who breathe them; and plaintiffs breathed this impure air. There is no question this type of pollution is the exact type of damage excluded from coverage under St. Paul's policy. The Eighth Circuit, applying Missouri law, has found a virtually identical pollution exclusion barred toxic tort coverage for claims arising out of Doe Run's Missouri facility. *See Doe Run Res. Corp. v. Lexington Ins. Co.*, 719 F.3d 868, 874 (8th Cir. 2013) ("It is hard to imagine a more perfect overlap between the allegations in a third party's underlying complaint and the operative language of a pollution exclusion."). This Court agrees. The pollution exclusion unambiguously bars coverage under these facts.

### 2. The Underlying Claims Do Not Render the Policy Ambiguous

Nevertheless, Doe Run asserts the policy is ambiguous because it precludes coverage for Doe Run's essential business materials, and, under *Hocker Oil*, the pollution exclusion should be given no effect. According to Doe Run, the Reid lawsuits "repeatedly" and "broadly" allege injuries resulting from commercial lead "produced, used, stored, or handled at and around the facility." Doe Run supports its contention by highlighting that, under Doe Run's calculation, the typical petition of the Reid lawsuits includes 15 references to the *storage* of lead or metals, nine references to the *use* of lead or metals, and five references to *maintaining* lead or metals. According to Doe Run, this, coupled with St. Paul's knowledge that Doe Run is in the lead business, make it clear the "lead" and "metals" referenced in the Reid lawsuits could refer to Doe Run's commercially valuable materials, making the pollution exclusion ambiguous under *Hocker Oil*.

In *Hocker Oil*, the court of appeals found a pollution exclusion in a gas station's insurance policy ambiguous because

it failed to explicitly include gasoline in its definition of "pollutants." 997 S.W.2d at 518. The gas station, which was in the business of "transporting, selling, and storing gasoline on a daily basis," disputed the exclusion's applicability to an accidental gasoline spill. *Id.* The company argued that it believed gasoline was not a pollutant, but a product. *Id.* at 513. Giving "pollutants" the meaning an ordinary purchaser of insurance would have assigned the term, the court concluded the gas station could have determined gasoline was not a pollutant under the exclusion because it was not identified as such. *Id.* at 518. This omission created "uncertainty and indistinctness," and the policy, therefore, was ambiguous and unenforceable. *Id.*

*Hocker Oil* is inapplicable here. Contrary to Doe Run's argument, the Reid lawsuits make absolutely no allegation of any injury caused by Doe Run's business products. Indeed, each of the selected quotations cited by Doe Run in its brief omits the actual alleged cause of injury: toxic releases emanating from Doe Run's metallurgical facility. For example, Doe Run claims the Reid lawsuits allege Doe Run "failed to control and contain the metals and other toxic substances used and generated by the complex...." Resp. Brief at 8 (emphasis omitted). What Doe Run omits with ellipses, however, is essential, as it transforms the underlying basis of the claim. The full allegation provides:

Defendants owned, operated, maintained, managed and/or used the La Oroya metallurgical complex and related operations and facilities, or acted in conspiracy with each other defendant and continue to do so in a way that negligently, carelessly and recklessly generated, handled, stored, released, disposed of, and failed to control and contain the metals and other toxic substances used and generated by the complex, *resulting in the release of toxic metals and gases and other toxic substances* onto and around the properties on which minor plaintiffs have in the past and/or continue to reside, use and visit, and/or were exposed, and *resulting in toxic exposure to minor plaintiffs.*

Petition at 8-9; *Sister Kate Reid, et al. v. Doe Run Resources Corp., et al.*, No. 0822-CC08086 (St. Louis County Aug. 7, 2008) (emphasis added).[4]

Despite Doe Run's attempts to frame the underlying claims in a more beneficial light, the Reid lawsuits do not allege any damages or injuries directly caused by the storage, use, maintenance, or other means of handling commercial lead or metals. Each claim referring to any direct contact with these materials falls into one of two categories: some claims merely raise prerequisite allegations of Doe Run's ownership of the La Oroya facility or the duty it owed to the plaintiffs,[5] while the others

---

**4.** Several quotations of the original petitions in Doe Run's brief contain similar omissions. *Compare* Resp. Brief at 30 ("*Reid* Lawsuits allegation that 'Doe Run owned, operated, used, managed, supervised, stored, maintained, and/or controlled the properties ... which contained and stored materials containing lead....'") *with* Petition at 4, *Sister Kate Reid, et al. v. Doe Run Resources Corp., et al.*, No. 0822-CC08086 (St. Louis County Aug. 7, 2008) ("Doe Run owned, operated, used, managed, supervised, stored, maintained, and/or controlled the properties *and the waste on such properties* which contained and stored

materials containing lead *and other toxic substances released from the La Oroya metallurgical complex....*") (emphasis added). That some allegations mention storage, maintenance, or usage is inapposite. Each petition alleges injuries based *exclusively* on toxic emissions.

**5.** For example, Doe Run argues the Reid lawsuits allege "[i]njuries resulted from 'metals and other toxic substances' it has generated, handled, stored, and disposed of at the La Oroya complex and related operations and facilities.'" Resp. Brief at 7 (emphasis omit-

allege the handling of lead and other metals *resulted in the negligent release of toxic substances into the environment*—the *actual* alleged cause of each plaintiff's injury or damage. The *only* exposure the plaintiffs had to Doe Run's lead products was via its release of toxic substances into the environment. And because Doe Run is not in the business of polluting the environment, these toxic emissions are not products Doe Run intends to sell. "That its toxic or hazardous materials are valuable products if Doe Run properly contains them does not make them any less 'pollutants' when they are abandoned and released into the environment." *Doe Run*, 719 F.3d at 875. Because these toxic lead byproducts are not Doe Run's business commodities, *Hocker Oil* does not apply.

The pollution exclusion unambiguously bars coverage and St. Paul has no duty to defend Doe Run for the Reid lawsuits. Because this Court finds no duty to defend, St. Paul's other issues on appeal are not addressed.

### Conclusion

The judgment is reversed, and this Court enters judgment in favor of St. Paul pursuant to Rule 84.14.

All concur.

---

ted). The actual allegation cited, however, makes no mention of injuries. Rather, it states: "Defendants ... owe and have owed a duty to minor plaintiffs who live in the vicinity of the complex, to control and contain the metals and other toxic substances it has generated, handled, and disposed of at the La

Oroya complex and related operations and facilities...." Petition at 12, *Sister Kate Reid, et al. v. Doe Run Resources Corp., et al.*, No. 0822-CC08086 (St. Louis County Aug. 7, 2008). This paragraph does not allege an injury but the existence of a duty owed by Doe Run to the plaintiffs.