# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3046
_____

Doe Run Resources Corporation

*Plaintiff - Appellant*

v.

St. Paul Fire & Marine Insurance Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 14, 2022
Filed: September 1, 2022
_____

Before SHEPHERD, ERICKSON, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

This insurance coverage dispute involves claims for coverage by Doe Run Resources Corporation against its insurer, St. Paul Fire & Marine Insurance Company, stemming from multiple lawsuits against Doe Run's Peruvian subsidiary, Doe Run Peru, which allege various claims stemming from Doe Run Peru's alleged release of toxic chemicals from a metallurgical plant. After an earlier coverage dispute in state court, where the court determined that a pollution exclusion in St.

Paul's policy precluded coverage, Doe Run filed this action alleging that additional, newly discovered facts implicated an exception to the exclusion that was not raised in the previous state court action. St. Paul filed a motion to dismiss based on issue and claim preclusion. The district court[1] granted the motion based on issue preclusion, and Doe Run appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Doe Run is a natural resources company engaged in the mining, milling, and smelting of lead and lead concentrate. Part of Doe Run's operations includes a metallurgical plant in La Oroya, Peru, owned and operated by Doe Run Peru, a subsidiary of Doe Run. Since 2007, 32 lawsuits have been filed against Doe Run by individuals who reside in the vicinity of the La Oroya plant, all of which allege that Doe Run was responsible for the release of toxic chemicals—including lead, arsenic, cadmium, and sulfur dioxide—into the environment, and that the release of these chemicals has injured them. The same law firm represents each of the plaintiffs.

St. Paul issued a general liability insurance policy to Doe Run with consecutive coverage periods from at least December 31, 2005, to November 1, 2006, and November 1, 2006, to November 1, 2007. Subject to various exclusions and conditions, the policy broadly provides coverage for bodily injury and property damage caused by an "event" taking place outside of the United States during the policy period, as well as coverage for defense costs. As relevant here, the policy contains a pollution exclusion, which provides:

> We won't cover injury or damage or medical expenses that result from pollution at, on, in, or from any:
> - protected person's premises;
> - waste site; or

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

- protected person's work site.

. . .

But we won't . . . apply this exclusion to:

- bodily injury or property damage that results from your products or your completed work, other than waste product or completed work; or
- premises damages that results from fire.

The policy defines "pollution" as "any actual, alleged, or threatened discharge, dispersal, escape, migration, release, or seepage of any pollutant." With respect to the exception contained in the exclusion, the policy defines "your completed work" as "your work that is completed, including work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete."

In 2010, following the filing of several of the aforementioned underlying lawsuits, Doe Run filed an action in the Circuit Court of St. Louis County against four insurance companies with which Doe Run had policies and which had denied Doe Run's claims for coverage, seeking reimbursement for defense costs incurred as a result of the underlying lawsuits. As relevant here, in 2012, Doe Run added St. Paul to the suit, asserting that St. Paul breached the insurance contract and unreasonably refused to pay and seeking a declaration that St. Paul was obligated to provide full coverage for defense costs and expenses in connection with the underlying lawsuits. Both St. Paul and Doe Run moved for summary judgment in this action, with St. Paul arguing that the pollution exclusion barred coverage and Doe Run arguing that the pollution exclusion was ambiguous and thus could not bar coverage. Both the trial court and Missouri Court of Appeals ruled in Doe Run's favor. However, on appeal, the Supreme Court of Missouri reversed, holding that "[t]he pollution exclusion unambiguously bars coverage and St. Paul has no duty to defend Doe Run for the [underlying] lawsuits." Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins., 531 S.W.3d 508, 515 (Mo. 2017) (en banc).

After the Supreme Court of Missouri ruled that St. Paul had no duty to defend Doe Run in the underlying lawsuits, an additional nine lawsuits[2] were filed against Doe Run, again alleging injuries stemming from Doe Run Peru's alleged release of toxic chemicals into the environment. For the first time, at least one of the new lawsuits made a claim of "negligent performance of a contract or undertaking," which was based on the allegation that Doe Run had been negligent in performing its services as a contractor for Doe Run Peru. Expert discovery later conducted as part of the underlying lawsuits suggested that other plaintiffs in these suits would soon assert similar claims against Doe Run for work it completed at the La Oroya plant as a third-party contractor. Believing that this new claim implicated an exception to the pollution exclusion for "your completed work," Doe Run retendered a request for defense coverage to St. Paul. St. Paul again denied the claim for coverage, after which Doe Run filed this action in state court, again asserting claims of breach of contract and an unreasonable refusal to pay and seeking a declaration that St. Paul had a duty to defend.

St. Paul removed this action to federal court and filed a motion to dismiss based on collateral estoppel and res judicata, or issue preclusion and claim preclusion, respectively. St. Paul asserted that issue preclusion barred this action because Doe Run was attempting to relitigate an issue conclusively resolved in the prior state court action and that claim preclusion also barred the action because Doe Run's claims could have been and were litigated in the prior state court action. Doe Run resisted the motion to dismiss, arguing that issue preclusion did not apply because the issues in this action and the prior state court action were not identical because the earlier litigation did not consider the exception to the pollution exclusion and Doe Run had not had a full and fair opportunity to litigate the exception. As to claim preclusion, Doe Run argued that it did not apply because the claim for coverage based on the newly filed underlying lawsuits was not a part of the prior state court action and the new theory of liability had not been raised in the underlying

_____

[2]These 9 are part of the 32 underlying lawsuits against Doe Run. The 32 total lawsuits represent 23 filed before the Supreme Court of Missouri rendered its decision and 9 filed after this decision.

-4-

lawsuits when the state court action was decided, meaning that Doe Run could not have asserted an argument based on the exception to the exclusion at the time that action was pending.

The district court granted the motion to dismiss based on issue preclusion, concluding that the issues in the prior state court action and this action were identical and that Doe Run had a full and fair opportunity to be heard. In finding the issues identical, the district court determined that the prior state court action had resolved the applicability of the pollution exclusion, which was the same issue that the parties disputed in this action. The district court noted that, despite Doe Run's desire to present new evidence about the applicability of an exception to the pollution exclusion, its conclusion remained the same because, as this Court has held, new evidence does not create a new, distinct issue when all events giving rise to the claims occurred before the filing of the first lawsuit. See Liberty Mut. Ins. Co. v. FAG Bearings Corp., 335 F.3d 752, 761 (8th Cir. 2003). As to Doe Run's opportunity to be heard, the district court noted that, where the parties remain the same between the different actions, absent a strong showing the contrary, courts assume that a party had a full and fair opportunity to be heard in the original action. Concluding that issue preclusion barred the action, the district court declined to consider whether claim preclusion similarly barred the action and granted the motion to dismiss. This appeal follows.

II.

Doe Run asserts that the district court erroneously dismissed its complaint based on issue preclusion, arguing that (1) the district court broadly and improperly characterized the issues in the current and prior actions, which led it to erroneously conclude that the issues were identical between cases; (2) Doe Run did not have a full and fair opportunity to litigate the issue of the exception to the pollution exclusion; (3) the exception was undisputedly not litigated in the prior state court action because new developments in the underlying suits rendered the exception applicable; and (4) under Missouri law, the duty to defend is subject to reassessment

-5-

when new claims or developments create or eliminate potential coverage. Doe Run also asserts that, even though the district court did not address it, res judicata also does not apply to bar Doe Run's claims. "We review de novo the district court's grant of a motion to dismiss based on collateral estoppel." Turner v. U.S. Dep't of Just., 815 F.3d 1108, 1111 (8th Cir. 2016) (emphasis omitted).

A.

Issue preclusion, dictates that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Id. (alteration in original) (citation omitted). In considering whether issue preclusion bars litigation of an issue, we apply the law from the forum state that rendered the first judgment, here, Missouri. See A.H. ex rel. Hubbard v. Midwest Bus Sales, Inc., 823 F.3d 448, 453 (8th Cir. 2016). Under Missouri law, courts consider three factors to determine whether issue preclusion applies:

> (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.

Liberty Mutual, 335 F.3d at 758 (citation omitted). In addition to these three factors, in some circumstances, courts also consider a fourth factor: "whether the party against whom preclusion is asserted had a 'full and fair opportunity' to litigate the issue." Id. "However, the 'full and fair opportunity to litigate' factor was developed to analyze cases where the parties in the first action are not the same as those in the second." Id. (citation omitted). Thus, where the parties are the same between the two actions, "absent a strong showing to the contrary, we assume that both [parties] had a full and fair opportunity to litigate the relevant issues." Id. at 759.

The parties dispute only the first and fourth factors. Beginning with the first factor, whether the issues between the actions were identical, "[d]efining the issue in the prior litigation is crucial in determining whether issue preclusion is available." Id. In general,

> the broader a court defines the issue previously litigated, the more likely it is to have preclusive effect in a subsequent litigation. On the other hand, by defining the issue narrowly and only in terms of the evidence or arguments actually considered by the court, litigants may be successful in arguing that the second proceeding involves a new or distinct issue not decided in the first.

Id. The district court defined the issues decided by the Supreme Court of Missouri as follows:

> (1) whether St. Paul had a duty to defend Doe Run in the [underlying] lawsuits. In order to resolve that issue, the state court necessarily decided the sub-issues of: (2) whether the Pollution Exclusion was ambiguous and (3) whether the Pollution Exclusion barred coverage.

R. Doc. 48, at 8-9. Doe Run argues that the district court defined the issue decided in the previous state court action at an overly broad and expansive level, which resulted in the district court erroneously concluding that issue preclusion applied. We disagree. The Supreme Court of Missouri expressly stated what issue it was considering:

> This case presents an issue of first impression for this Court: whether an insurance policy's general pollution exclusion bars defense coverage of a toxic tort claim arising from alleged industrial pollution. Because the pollution exclusion is unambiguous and bars coverage, St. Paul does not have a duty to defend Doe Run.

531 S.W.3d at 511. We agree with the district court that the Supreme Court of Missouri decided the issue of whether St. Paul had a duty to defend Doe Run, which included the necessary sub-issue of interpretation of the pollution exclusion.

-7-

Because the Supreme Court of Missouri held that St. Paul had no duty to defend, rather than solely addressing the sub-issue of the pollution exclusion, the district court did not err in construing the Supreme Court of Missouri's opinion to have addressed the broader issue of whether the policy provided coverage for Doe Run's claim. See Stark Liquidation Co. v. Florists' Mut. Ins. Co., 243 S.W.3d 385, 392 (Mo. Ct. App. 2007) ("To extricate itself from a duty to defend the insured, the insurance company must prove that there is *no possibility* of coverage." (citation omitted) ). We conclude that the issue decided in the prior state court action was identical to the issue presented in this action: whether the pollution exclusion excused St. Paul from its duty to defend Doe Run in the underlying lawsuits.

We now turn to the fourth factor, whether Doe Run had a full and fair opportunity to be heard. Like the district court, we note that this factor is an additional, sometimes-added element under Missouri law that was designed to address situations where the parties in the second litigation were not the same as in the first. James v. Paul, 49 S.W.3d 678, 684 (Mo. 2001) (en banc) ("The fourth factor . . . is subject to some misunderstanding. The 'full and fair opportunity to litigate the issue in the first suit' is not a second layer of privity analysis under which only those in privity who had actual notice and an opportunity to intervene may be bound by a prior adjudication. Rather, it is a shorthand description of the analysis required to determine if non-mutual collateral estoppel should be applied. The principle of non-mutual collateral estoppel, as adopted in Missouri, permits use of a prior judgment to preclude relitigation of an issue even though the party asserting collateral estoppel was not a party to the prior case." (footnote omitted)). And, where there is no evidence to the contrary, we assume that, where the parties remained the same, the party against whom issue preclusion is being used had a full and fair opportunity to be heard in the first action. See Liberty Mutual, 335 F.3d at 765. This rule is not altered by Doe Run's claims of newly discovered evidence. Because the parties remained the same between the two actions and there is nothing in the record suggesting that Doe Run did not have a full and fair opportunity to be heard in the prior state court action, we conclude, as did the district court, that Doe Run had "a

full and fair opportunity to litigate" in the prior action.  See James, 49 S.W.3d at 682.

## B.

Despite the presence of all elements of issue preclusion, Doe Run argues that newly discovered evidence and new claims asserted in the underlying lawsuits implicate an exception to the pollution exclusion.  Thus, according to Doe Run, issue preclusion cannot bar it from now asserting that this exception applies, and coverage exists under the policy.  We disagree.  In Liberty Mutual, we rejected a party's argument that newly discovered evidence or a change in events between the initial and subsequent litigation barred the application of issue preclusion.  335 F.3d at 761.  There, we stated:

> Where the first and second actions are both based on an evaluation of the same historical facts, a litigant seeking to introduce newly discovered evidence otherwise in existence at the time of the first suit may not argue that the facts have changed in the time period between the two actions in order to avoid the preclusive effect of the first decision.

Id.  We also distinguished this scenario from those cases where "courts refused to apply collateral estoppel because of events that occurred or relationships that actually changed between the first and second actions."  Id.  Here, the same historical facts underlie all of the litigation related to the alleged release of toxic chemicals at the La Oroya plant.  The only change that occurred between the prior state court action and this action is a new theory of liability alleged by some plaintiffs in the underlying lawsuits, and there is no suggestion that this new theory of liability is based on evidence that was not in existence at the time of the original action.  See id. (concluding that revelation of new evidence that was in existence at the time of incident giving rise to coverage claim is not the same as a change in underlying facts).  In the absence of subsequent events or circumstances representing an actual change between the prior state court action and this action, issue preclusion applies.

-9-

We are similarly unpersuaded by Doe Run's assertion that issue preclusion cannot apply because Missouri law dictates that an insurer has an obligation to reconsider its prior refusal to defend when new claims or facts arise. See Esicorp, Inc. v. Liberty Mut. Ins. Co., 193 F.3d 966, 969 n.1 (8th Cir. 1999) ("[I]f the insured later submits an amended pleading or additional facts that suggest the presence of covered claims, the insurer has an obligation to reconsider its refusal to defend."). Here, St. Paul did reconsider Doe Run's claim for coverage when Doe Run resubmitted the claim following the nine newly filed lawsuits alleging pollution from the La Oroya plant, which alleged a new theory of liability.

We conclude that the district court did not err in granting St. Paul's motion to dismiss based on issue preclusion, and because the district court did not err, we need not consider the parties' arguments regarding claim preclusion.

III.

For the foregoing reasons, we affirm the judgment of the district court.

STRAS, Circuit Judge, concurring in the judgment.

Few doctrines get confused as often as issue and claim preclusion. They each promote finality, *see Sexton v. Jenkins & Assocs., Inc.*, 152 S.W.3d 270, 274 (Mo. banc 2004), and occasionally both apply in the same case, *see Kesler v. Curators of the Univ. of Mo.*, 516 S.W.3d 884, 899 (Mo. Ct. App. 2017).

But the doctrines differ in one crucial respect. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *Hollida v. Hollida*, 190 S.W.3d 550, 555 (Mo. Ct. App. 2006). Issue preclusion is about *issues*: it forecloses "'successive litigation of an *issue of fact or law* actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (emphasis added) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)); *see also Oates v. Safeco Ins. Co. of Am.*, 583 S.W.2d 713,

-10-

719 (Mo. banc 1979) (describing issue preclusion).  Claim preclusion, by contrast, is about *claims*: it "forecloses 'successive litigation of the *very same claim*, whether or not relitigation of the claim raises the same issues as the earlier suit.'"  *Taylor*, 553 U.S. at 892 (emphasis added) (quoting *New Hampshire*, 532 U.S. at 748); *see also Oates*, 583 S.W.2d at 719 (describing claim preclusion).

This case is about claims, not issues.  In the previous Missouri case, Doe Run sought liability coverage from its insurer, St. Paul Fire & Marine Insurance Company, because of lead particulate that had leaked into the environment from a plant it operated in Peru.  No Missouri court said a single word about the completed-work exception, meaning it has never been "actually litigated and resolved."  *See, e.g.*, *Doe Run Res. Corp. v. Am. Guar. & Liab. Ins.*, 531 S.W.3d 508 (Mo. banc 2017).  In other words, the issue is new, so issue preclusion cannot stand in the way.  *See* Restatement (Second) of Judgments § 27 (Am. Law Inst. 1982); *see also Xiaoyan Gu v. Da Hua Hu*, 447 S.W.3d 680, 686–87 (Mo. Ct. App. 2014) (holding that issue preclusion "does *not* apply" when a party raises an insurance exclusion it never litigated in the first action (emphasis added)).

The *claim*, on the other hand, is old.  These parties have already litigated whether St. Paul must defend and indemnify Doe Run for the release of lead particulate into the environment.  *See Doe Run*, 531 S.W.3d at 515.  The Missouri Supreme Court said no.  Doe Run lost.

It does not get a second bite at the apple.  Claim preclusion applies when the old and new claims share four "identities": (1) the same parties (2) suing in the same capacity (3) disputing the same cause of action (4) for the same remedy.  *See King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991).  All four identities are present: Doe Run once again wants the same coverage from the same insurer for the release of the same pollutant from the same plant.  As Missouri courts have put it, *claim* preclusion "unequivocally applies" in this situation because Doe Run "failed to raise" the completed-work exception "in the prior action for failure to exercise reasonable

-11-

diligence." *Xiaoyan Gu*, 447 S.W.3d at 688.  For that reason, I concur in the judgment.

_____