

# Missouri Court of Appeals
## Southern District

### In Division

DAWN BLAND, )
)
    Plaintiff-Respondent, )
)
v. ) No. SD37582
) Filed: April 28, 2023
PROGRESSIVE CASUALTY )
INSURANCE COMPANY, )
)
    Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF SCOTT COUNTY

Honorable David A. Dolan, Circuit Judge

**AFFIRMED**

Progressive Casualty Insurance Company (Progressive) appeals from a $50,000 judgment in favor of its insured, Dawn Bland (Dawn), pursuant to the uninsured motorist (UM) coverage in her Progressive policy.[1] The existence and scope of Progressive's UM coverage were the disputed issues below, and the parties filed cross-motions for summary judgment. Those issues were decided when the trial court granted Dawn's motion for summary judgment. We conclude that: (1) the policy language removing a "covered auto" from the definition of "uninsured motor vehicle" in Progressive's policy violates Missouri's

---

[1] Because Dawn and her husband share the same surname, we will refer to them individually by their given names for clarity.

public policy contained in § 379.203; and (2) a step-down exclusion in the UM coverage, by its own terms, does not apply to these facts.[2]  Therefore, the $50,000 judgment in Dawn's favor is affirmed.

**Factual and Procedural Background**

The material facts were presented in the parties' cross-motions for summary judgment and are undisputed.  Dawn and her husband, Garry Bland (Garry), owned a 2009 Chevrolet Silverado truck (the Silverado) that was insured by Progressive via policy number 924302938 (the Policy).  The Policy term commenced on September 7, 2019, and ended on March 7, 2020.  Insofar as relevant here, the declarations page for the Policy listed the Silverado and stated that:  (1) the general policy coverages apply to all listed vehicles unless otherwise indicated; and (2) the limits for liability and UM coverages were $50,000 per person and $100,000 per accident.  Garry was the named insured.  Dawn resided in the same household with Garry.  The Policy's General Definitions 5 and 17 stated:

5.  "**Covered auto**" means:

a. any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**[.]

….

17.  "**You**" and "**your**" mean:

a.  a person shown as a named insured on the **declarations page**; and

b.  the spouse of a named insured if residing in the same household at the time of the loss.

(Bold emphasis in original.)

Pursuant to the Policy's liability coverage, Progressive agreed to pay "damages for **bodily injury** … for which an **insured person** becomes legally responsible because of an

---

[2]  All references to statutes are to RSMo (2016).  All references to rules are to Missouri Court Rules (2020).

2

accident." (Bold emphasis in original.) An additional definition in the liability coverage stated that an insured person included "any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**[.]" (Bold emphasis in original.)

Pursuant to the Policy's UM coverage, Progressive agreed to "pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**: 1. sustained by that **insured person**; and 2. arising out of the ownership, maintenance or use of an **uninsured motor vehicle**." (Bold emphasis in original.) An additional definition in the UM coverage stated:

> When used in this Part III(A) [UM coverage]:
> …
> 2. "**Uninsured motor vehicle**" means a land motor vehicle or trailer:
>     …
>     b.  to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
>         (i) denies coverage[.]
>     ….
>     However, an "**uninsured motor vehicle**" does not include any vehicle or equipment:
>     …
>     e.  that is a **covered auto**[.]

(Bold emphasis in original.) Insofar as relevant here, the "Exclusions" portion of the UM coverage in the Policy included Exclusion 1 and Exclusion 6:

> Coverage under this Part III(A) [UM coverage] will not apply:
>
> 1.  to **bodily injury** sustained by any person while using or **occupying**:
>
>     a.  a **covered auto** while being used:
>         (i) to carry persons or property for compensation or a fee;
>         (ii) for retail or wholesale delivery, including, but not limited   to,   the pickup, transport or delivery of magazines,  newspapers,  mail  or  food; or
>         (iii) for **ride-sharing** activity.
>     ….

3

6. to **bodily injury** sustained by any person that arises out of the ownership, maintenance or use by any other person of an **uninsured motor vehicle** that is:

> a. owned by or available for the regular use of **you**, a **relative**, or a **rated resident**
>
> ….
>
> This exclusion does not apply to **bodily injury** sustained by:
>
> a. **you**
>
> …
>
> with respect to the portion of the damages that is less than or equal to the minimum limits of uninsured motorist coverage required by Missouri law….

(Bold emphasis in original.)

On January 19, 2020, Defendant Kevin Jobe (Jobe) carjacked the Silverado. Dawn attempted to stop Jobe, but she was ejected from the Silverado and sustained serious bodily injuries. The parties agree that Dawn's damages exceed $50,000. Progressive denied liability coverage for Jobe because he was operating the Silverado without permission. Dawn filed suit against Progressive, seeking $50,000 in UM benefits. An additional count in the petition seeking damages for vexatious refusal to pay was later voluntarily dismissed by Dawn.

In due course, the parties filed cross-motions for summary judgment on the UM coverage issues. The trial court granted Dawn's motion, denied Progressive's motion and entered a judgment for $50,000 in Dawn's favor. This appeal by Progressive followed.

**Standard of Review**

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6); *Nationwide Ins. Co. v. Dugger*, 484 S.W.3d 377, 379 (Mo. App. 2016). "Summary judgment is frequently used in the context of insurance coverage questions." *Assurance Co.*

4

*of America v. Secura Ins. Co.*, 384 S.W.3d 224, 230 (Mo. App. 2012); *Cowin v. Shelter Mut. Ins. Co.*, 460 S.W.3d 76, 77 (Mo. App. 2015). The existence and amount of UM coverage provided by Progressive involves the interpretation of the Policy and the application of § 379.203 to the Policy. Both are questions of law which we review *de novo. Dugger*, 484 S.W.3d at 379.

"Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009).

> When interpreting an insurance policy, [an appellate court] gives the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance. If the policy language is clear and unambiguous, it must be construed as written. An ambiguity exists only if a phrase is "reasonably open to different constructions."

*Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. banc 2017) (citations omitted); *Arnold v. Farm Bureau Town & Country Ins. Co. of Missouri*, 605 S.W.3d 162, 164 (Mo. App. 2020). "A court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate." *Doe Run Res. Corp.*, 531 S.W.3d at 512 (citation omitted).

**Discussion and Decision**

*Point 1*

In Point 1, Progressive contends the trial court erred by granting Dawn's motion for summary judgment because the Policy's removal of "covered auto" from the definition of "uninsured motor vehicle" was not ambiguous or contrary to Missouri public policy as established by § 379.203.

Progressive's first argument is that there is no ambiguity in the Policy's language removing a "covered auto" from the definition of an "uninsured motor vehicle." We agree.

5

Giving that Policy language its plain meaning, we must apply it as written. ***Doe Run Res. Corp.***, 531 S.W.3d at 511. Therefore, pursuant to the clear language of the Policy, a "covered auto" is not included in the definition of an "uninsured motor vehicle" in the UM coverage.

Progressive's second argument is that the removal of a "covered auto" from the definition of an "uninsured motor vehicle" in the Policy does not violate the public policy created by § 379.203 with respect to UM coverage. This is the dispositive issue on coverage, and we conclude that Progressive's argument has no merit. In relevant part, § 379.203 states:

> No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered … in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto … in not less than the limits for bodily injury or death set forth in section 303.030, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

§ 379.203.1. Thus, "[u]nder Missouri law, an automobile liability insurance policy must provide UM coverage." ***Purk v. Farmers Ins. Co., Inc.***, 628 S.W.3d 714, 722 (Mo. App. 2021); *see **Copling v. Am. Fam. Mut. Ins. Co., S.I.***, 612 S.W.3d 226, 230 (Mo. App. 2020). The mandatory coverage amount required by the Motor Vehicle Financial Responsibility Law (MVFRL) for bodily injury or death is $25,000 per person and $50,000 per accident. *See* § 303.030.5; ***Dugger***, 484 S.W.3d at 379.

As our Supreme Court stated in ***Rice v. Shelter Mut. Ins. Co.***, 301 S.W.3d 43 (Mo. banc 2009):

> Missouri requires the presence of uninsured motorist coverage in the minimum amount of $25,000 per person/$50,000 per occurrence but allows citizens to purchase coverage above that minimum. Section 379.203.1. The purpose of section 379.203 is to establish a minimum level of protection

6

equivalent to the liability coverage the insured would have received had the insured been involved in an accident with an insured tortfeasor.

*Id*. at 46. "Missouri courts have made it clear that, unlike liability insurance, uninsured motorist coverage inures to the person, not the vehicle." ***Gibbs v. Nat'l Gen. Ins. Co.***, 938 S.W.2d 600, 606 (Mo. App. 1997). The rationale for that rule was explained in ***First Nat. Ins. Co. of Am. v. Clark***, 899 S.W.2d 520 (Mo. banc 1995):

> By its clear language, Section 379.203 requires a minimum amount of coverage to persons, not particularly described vehicles. Thus, *Cameron* held that a contract term that purported to limit uninsured motorist coverage to injuries received in a particularly described vehicle violated the statutory mandate. Unlike uninsured motorist coverage, the liability insurance described under the safety responsibility law relates to the use and operation of a particularly described motor vehicle or class of motor vehicles. As the court said in *Tucker v. Government Employees Insurance Co.*, 288 So.2d 238, 242 (Fla.1973), a case that *Cameron* quoted at unusually great length to support its holding,
>
> > [w]e must not confuse uninsured motorist protection as inuring to a particular motor vehicle as in the case of automobile liability insurance. It [uninsured motorist coverage] is bodily injury insurance which protects against such injury inflicted by the negligence of any uninsured motorist.

*Clark*, 899 S.W.2d at 522 (brackets in original); *see **Cameron Mut. Ins. Co. v. Madden***, 533 S.W.2d 538, 545 (Mo. banc 1976). For this reason, our Supreme Court has rejected attempts by insurers to completely bar an insured from receiving UM coverage based upon a policy definition or exclusion, which are "contrary to the public policy of § 379.203 and invalid." ***Shepherd v. American States Ins. Co.***, 671 S.W.2d 777, 780 (Mo. banc 1984); *see also Gibbs*, 938 S.W.2d at 605 (holding that a passenger who grabbed the steering wheel and caused the vehicle to crash was operating it, and a regular use policy exclusion precluding UM coverage violated the public policy expressed in § 379.203).

After Progressive's denial of liability coverage for Jobe's non-permissive use, the Silverado met the Policy's definition of an uninsured motor vehicle. Progressive seeks to

7

avoid the application of that Policy language as written by arguing that the removal of a "covered auto" from the definition of an "uninsured motor vehicle" does not violate Missouri public policy as set forth in § 379.203.  We disagree.

It is well settled that both tort and contract principles will determine whether an insured can recover on a UM policy.  *State ex rel. Smith v. Gray*, 979 S.W.2d 190, 193 (Mo. banc 1998).  The insured must prove causal negligence on the part of the uninsured motorist and a contractual basis for recovery.  *Id*.

The undisputed facts here establish a basis for a tort claim against Jobe.  Dawn's injuries resulted from Jobe's operation of the Silverado.  For purposes of UM coverage, it is irrelevant that Jobe's conduct was intentional.  The public policy adopted in § 379.203 is to provide UM coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury ... resulting therefrom."  § 379.203.1.

> The statute does not say "resulting from an accident" involving the uninsured motor vehicle.  When the policy undertakes so to limit the coverage, as Farmers says it does limit it, it undertakes to narrow the coverage mandated by section 379.203. Any such attempted limitation upon the coverage required by the statute is against public policy and is void.

*Thornburg v. Farmers Ins. Co.*, 859 S.W.2d 847, 849 (Mo. App. 1993); *see also Keeler v. Farmers & Merchants Ins. Co.*, 724 S.W.2d 307, 310 (Mo. App. 1987) (an attempt to exclude intentional acts of an uninsured motorist from coverage under a policy would violate § 379.203).  Thus, Dawn has satisfied the tort element of her UM claim based on the undisputed facts.

Citing *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137 (Mo. banc 1980), Progressive argues that the contractual basis for recovery is lacking.  We disagree.  In *Stotts v. Progressive Classic Ins. Co.*, 118 S.W.3d 655 (Mo. App. 2003), the western district of

8

this Court conducted a very thorough review of *Harrison* and reached the following conclusion about its meaning and application:

> *Harrison* teaches us that the contract element of the mandated uninsured motorist coverage of § 379.203, that the subject vehicle is uninsured, can be satisfied where either the owner or operator does not have a liability policy insuring the vehicle. … In other words, if the tortfeasor is an operator, then the vehicle is uninsured if there is not a liability policy covering the tortfeasor's negligent operation of the vehicle; or if the tortfeasor is an owner, the vehicle is uninsured if there is not a liability policy covering the owner's negligent acts in causing the accident.

*Id*. at 666-67; *see also* **Morris v. GEICO Cas. Co.**, 619 S.W.3d 103, 111-12 (Mo. App. 2021) (citing **Stotts** for the proposition that whether a vehicle is uninsured for purposes of § 379.203 turns on the underlying tort liability alleged and whether there is coverage for that particular tort, and not solely on whether there was an owner's or operator's policy in effect at the time of the accident).[3] Here, Dawn's tort claim against Jobe was based upon his status as an operator of the Silverado. Because he was not using that vehicle with permission, the Policy provided no liability coverage to Jobe. There is no evidence of any other policy that would provide liability coverage to Jobe for his tortious conduct. Thus, Dawn also has satisfied the contract element of her UM claim based on the undisputed facts.

---

[3] The following quotation from **Harrison** is also directly relevant to the case at bar:

> Whether a motor vehicle is insured or uninsured by liability coverage depends on whether the liability coverage is applicable under its terms and conditions in light of the specific circumstances of the vehicle's operation. … For example, *a liability policy is not applicable, and hence the vehicle is uninsured, where the automobile is driven by a thief or a non-permissive user, even though the automobile in question is the described automobile of the liability policy.*

**Harrison**, 607 S.W.2d at 141 (italics added).

Permitting Progressive to rely upon the removal of a "covered auto" from the definition of an "uninsured motor vehicle" would completely deny UM coverage to Dawn and thereby violate Missouri public policy as set forth in § 379.203. *See Gibbs*, 938 S.W.2d at 605-07 (a regular use exclusion that would have precluded UM coverage for an uninsured operator of the vehicle violated the public policy expressed in § 379.203). Point 1 is denied.

*Point 2*

In Point 2, Progressive challenges the trial court's entry of a judgment for Dawn in the amount of $50,000. Progressive contends the language of Exclusion 6 in the UM coverage of the Policy limits the amount that can be awarded to the $25,000 required by the mandatory MVFRL. There is no merit in that argument.

The alleged error identified in Progressive's point relied on is that the trial court failed to apply Exclusion 6 to limit Dawn's recovery. This contention is based solely on the language of Exclusion 6.[4] In evaluating this argument, we must interpret the Policy provisions as a whole, rather than in isolation. *Ritchie*, 307 S.W.3d at 135. We must give the Policy language its plain meaning and enforce it as written if it is clear and unambiguous. *Doe Run Res. Corp.*, 531 S.W.3d at 511.

The Policy's General Definition 5 defined "covered auto" to include any auto shown on the declarations page. The Silverado was listed on the declarations page, so it was a covered auto. In the Policy's UM coverage, an "uninsured motor vehicle" was defined to

---

[4] Progressive's reliance on *Ezell v. Columbia Ins. Co.*, 942 S.W.2d 913 (Mo. App. 1996) is misplaced. There, the insurer argued that a policy definition of "uninsured motor vehicle" was only partially invalidated by § 379.203. *Id*. at 915. That is not what Progressive is arguing in the case at bar. Here, Progressive's contention in Point 2 is based solely on the language of Exclusion 6 in the Policy. Our review of Progressive's argument is limited only to this Policy interpretation issue. *See Cass Cnty. v. City of Lee's Summit*, 638 S.W.3d 560, 567 n.9 (Mo. App. 2021) (an appellate court's review is limited to the issue raised in the point relied on).

include a land motor vehicle to which a bodily injury policy applied at the time of the accident, but the insuring company denied coverage. That occurred here because the Silverado was insured by Progressive, which denied coverage to Jobe as a non-permissive user. However, the Policy specified that an "uninsured motor vehicle" does not include any vehicle that is a "covered auto" listed in the declarations. As mentioned previously, the Exclusions portion of the UM coverage included Exclusions 1 and 6:

> Coverage under this Part III(A) [UM coverage] will not apply:
>
> 1.  to **bodily injury** sustained by any person while using or **occupying**:
>
>     a. a **covered auto** while being used:
>     (i) to carry persons or property for compensation or a fee;
>     (ii) for retail or wholesale delivery, including, but not limited   to,   the pickup, transport or delivery of magazines,  newspapers,  mail  or  food; or
>     (iii) for **ride-sharing** activity.
>     ….
>     6. to **bodily injury** sustained by any person that arises out of the ownership, maintenance or use by any other person of an **uninsured motor vehicle** that is:
>
>     a. owned by or available for the regular use of **you**, a **relative**, or a **rated resident**
>     ….
>     This exclusion does not apply to **bodily injury** sustained by:
>
>     a. **you**
>     …
>     with respect to the portion of the damages that is less than or equal to the minimum  limits  of  uninsured  motorist  coverage  required  by  Missouri law….

(Bold emphasis in original.) Progressive's argument fails because our review of Exclusion 6 shows that it does not apply to Dawn's UM claim. The premise of this argument is that Dawn sustained bodily injury arising out of the use of an "uninsured motor vehicle," which then implicated the MVFRL limits. Based on the plain language of the Policy, that premise is demonstrably false.

11

In Point 1, Progressive argued, and we agreed, that the Policy unambiguously defined an "uninsured motor vehicle" so as not to include a "covered auto" listed in the declarations. Our decision that Dawn was entitled to UM coverage was not based on the language of the Policy, but on the public policy contained in § 379.203. The Silverado was listed in the declarations, so it clearly does not meet the Policy's definition of an "uninsured motor vehicle," as that phrase is used in Exclusion 6. We must apply this clear and unambiguous language as Progressive wrote it. We also note that Exclusion 1 in the same section of the Policy specifically used the phrase "covered auto" in excluding certain events from UM coverage. As defined by the Policy, a "covered auto" is simply not an "uninsured motor vehicle." Progressive's use of the phrase "covered auto" in Exclusion 1 amply demonstrates that fact. Finally, we note that Progressive could have included a general minimum-financial-responsibility clause in the Policy, such as one stating: "If any uninsured motorist insurance law or financial responsibility law determines that any exclusion is unenforceable, **we** will provide only the minimum limits required by that law." *See **Jones v. Am. Fam. Mut. Ins. Co., S.I.**,* 632 S.W.3d 482, 485 (Mo. App. 2021) (bold emphasis in original). Progressive did not do so. Because the Policy's clear and unambiguous language in Exclusion 6 does not support Progressive's argument, Point 2 is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCUR

JENNIFER R. GROWCOCK, J. – CONCUR


12